801 F.2d 393
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Robert D. BAILEY, Appellee,
v.
Ferris E. TRAYLOR, Individually, and as Associate General
Partner of Oceana Partners, Ltd.; Ferris J. Traylor,
Individually, and as Managing General Partner of Oceana
Partners, Ltd., and as Beneficiary in the Traylor Family
Trust; Ocean Partners, Ltd. and Caribbean Ventures Group,
Inc., a Florida Corporation, Appellants,
Mary V. Traylor, as Initial Limited Partners and a
Beneficiary of the Traylor Family Trust; the Other Members
of the Ferris E. Traylor Family constituting the
Beneficiaries of the Family Trust and Francis J. Murtha,
Jr., Attorney for the Traylor Family Trust, Defendants.
 No. 85-2306.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 6, 1986.
Decided Sept. 15, 1986.
 
 L. Alvin Hunt (Preiser & Wilson, on brief), for appellants.
 David Burton (Burton & Goad, on brief), for appellee.
 S.D.W.Va.
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 Before HALL and ERVIN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 ERVIN, Circuit Judge:
 
 
 1
 This is an appeal from a jury verdict for Robert D. Bailey on his fraud claim, based on an unconsummated deal to purchase his West Virginia company, J & J Coal. Defendants-appellants Ferris E. Traylor, his son Ferris J. Traylor, and various Traylor-family businesses claim that the judgment should be set aside because of the absence of a necessary party. Alternatively, they argue that their motion for judgment notwithstanding the verdict should have been granted. They also challenge the jury's award of $3,250,000 in compensatory and $3,500,000 in punitive damages.
 
 
 2
 Although we find no error in the liability aspect of the case, we believe that the damages are so excessive that they cannot be permitted to stand. We, therefore, affirm in part, reverse in part, and remand for a new trial on the damages issues.
 
 I.
 
 3
 In 1979, J & J Coal held an option to acquire several hundred acres of coal-bearing property, called "the Mountaintop property," through purchase and lease. At the time J & J Coal acquired the option, it was undergoing severe financial difficulties.
 
 
 4
 In July 1979, F.E. Traylor and Bailey orally agreed that Oceana Limited Partnership, a Traylor-family company that was about to be formed, would purchase Bailey's stock in J & J Coal and J & J Coal's interests and assets, including the Mountaintop property. Shortly thereafter, F.E. Traylor sent written notification of the deal to five West Virginia banks, to assuage their fears about the financial position of J & J Coal.
 
 
 5
 The deal, which should have been consummated in August or September 1979, was delayed repeatedly. Finally in November 1979, F.J. Traylor and Bailey signed a Purchase Agreement, under which Bailey would receive $200,000 for his stock and J & J Coal would receive $2,500,000 for its assets, including the Mountaintop option. The parties initially contemplated that Oceana Partnership would acquire the Mountaintop option, exercise it, and purchase the Mountaintop property for $584,000. When F.J. Traylor signed the Purchase Agreement, Bailey, an experienced West Virginia attorney, assured him that only Oceana Partnership, not F.J. Traylor personally, would be liable under the agreement.
 
 
 6
 In late November 1979, Bailey received completed, but unsigned, limited partnership agreements for Oceana Partner ship. Nevertheless, Oceana Partnership was never formed.
 
 
 7
 The Traylors repeatedly assured Bailey that the deal would close in the near future. When the Mountaintop option was about to expire, they arranged for third parties to supply the funds necessary for the down payment. Using these funds, Bailey exercised the option. The original owners of the Mountaintop property retained a deed of trust lien.
 
 
 8
 Although the Traylors or their associates made some payments directly to creditors, the full purchase price for Bailey's stock and J & J Coal's assets was not paid. Believing he had an agreement with the Traylors, Bailey kept J & J Coal afloat with personal loans and refused other potential purchas ers. Finally, in March 1981, J & J Coal filed for bankruptcy. Banks then called in several loans Bailey had guaranteed for J & J Coal or had personally taken out for J & J Coal's benefit.
 
 
 9
 In early 1983, the original owners of the Mountaintop property foreclosed on the deed of trust and auctioned the property. The high bidder was Caribbean Ventures Group, Inc., a Traylor-family company of which F.J. Traylor was President. F.E. Traylor did the bidding for Caribbean Ventures, and the Mountaintop property was acquired for $402,500.
 
 
 10
 In this lawsuit, Bailey claims that the Traylors' course of conduct constituted fraud. Bailey contends that the Traylors never intended to consummate the deal set out in the Purchase Agreement. Rather, they intended to bankrupt Bailey and J & J Coal and acquire the Mountaintop property for a lower price. Bailey claims that the Traylors' conduct cost him approximately $2,000,000 in itemized damages, including inter alia $963,503.16 in judgments against Bailey, $663,000 in bank stock Bailey was forced to sell because of his financial position, and $185,000 lost on the sale of Bailey's home . Bailey also claims that he deserves compensation for the humiliation of undergoing bankruptcy, and punitive damages for the Traylors' allegedly willful deceit.
 
 
 11
 A jury agreed with Bailey, and awarded him $3,250,000 compensatory and $3,500,000 punitive damages. This appeal followed.
 
 II.
 
 12
 Defendants-appellants first claim that the judgment below should be nullified because a necessary party, J & J Coal, was absent from the case. We find no abuse of discretion in the district court's determination that J & J Coal is not a necessary party. See General Tire & Rubber Co. v. Watkins, 326 F.2d 926, 929 (4th Cir.), cert. denied, 377 U.S. 809 (1964) (standard review).
 
 
 13
 Federal Rule of Civil Procedure 19(a) (2) (ii) supplies the rule governing joinder of J & J Coal. That provision states:
 
 
 14
 A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if ... (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may ... (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.
 
 
 15
 Appellants argue that J & J Coal has a cause of action for fraud that is very similar to Bailey's. Furthermore, many of Bailey's damages arise out of his guarantees of loans to J & J Coal. The Traylors claim that in a second suit, J & J Coal could assert claims for these same damages, resulting in dual payment. Consequently, they claim that the absence of J & J Coal poses a "substantial risk of ... double, multiple, or otherwise inconsistent obligations." Id.
 
 
 16
 Appellants' reasoning is flawed because as a practical matter, no substantial risk of inconsistent judgments exists. We note that the statute of limitations has already run on any fraud claim by J & J Coal arising out of the Traylors' conduct, see W. Va. Code Sec. 55-2-12 (1981), and that the bankruptcy trustee for J & J Coal has not attempted to pursue claims against the Traylors. The risk of multiple or conflicting recovery by J & J Coal is, therefore, not "substantial," and the denial of joinder was not an abuse of district court discretion. See Coastal Modular Corp. v. Laminators, Inc., 635 F.2d 1102, 1107-08 (4th Cir.1980).[1]
 
 III.
 
 17
 F.J. Traylor and Caribbean Ventures argue that a directed verdict or judgment notwithstanding the verdict was the appropriate disposition of Bailey's claims against them. F.E. Traylor does not dispute the jury's verdict that he is liable for fraud. Because a reasonable jury could find F.J. Traylor and Caribbean Ventures responsible as participants in or knowing beneficiaries of an ongoing fraudulent scheme masterminded by F.E. Traylor, the district court's denial of a directed verdict and j.n.o.v. was correct.
 
 
 18
 A jury question was clearly presented as to F.J. Traylor's participation in an ongoing fraud.[2] F.J. Traylor was intimately involved in his father's business affairs, including the Bailey deal. He was an officer in both Oceana Partnership, the purported buyer of J & J Coal that never existed, and in Caribbean Ventures, the family company that ultimately acquired the Mountaintop property. A reasonable jury could infer from F.J. Traylor's positions and actions that he knowingly participated in the fraud.
 
 
 19
 Although Caribbean Ventures was not involved in the negotiations with Bailey, it was the ultimate purchaser of the Mountaintop property. Under West Virginia law, a knowing beneficiary of fraud may share liability for the fraudulent conduct. See, e.g., Wood Count Bank v. King 141 W. Va. 226, 230, 89 S.E.2d 627, 630 (1955). Since Caribbean is a Traylor-family entity headed by F.J. Traylor, a reasonable jury could impute knowledge of the fraud to Caribbean Ventures.
 
 
 20
 The Traylors' allegation that the auction purchase of the Mountaintop property cost more than acquisition under the Purchase Agreement does not destroy Bailey's fraud claim.[3] Under the Bailey agreement, the Traylors had to pay approximately $3,000,000 for a group of assets. If their goal was acquisition of the Mountaintop property alone, they arguably saved themselves the time and expense of disposing of unwanted J & J Coal assets by buying at the auction. The Traylors' interim payments to creditors also do not make fraud inconceivable, since these payments can be viewed as a small investment in the ultimate achievement of their fraudulent scheme. A jury question as to fraud by F.J. Traylor and Caribbean Ventures, therefore, clearly existed.
 
 IV.
 
 21
 Finally, the Traylors claim that the jury's award of compensatory and punitive damages is excessive and not supported by the evidence. On appeal, this circuit will overturn a jury award of damages " 'only in the most extreme circumstances, as where the verdict is not merely excessive but monstrous'." Arnold v. Eastern Air Lines, Inc., 681 F.2d 186, 201 (4th Cir. 1982) (quoting Simmons v. Avisco Local 713, Textile Workers Union, 350 F.2d 1012, 1020 (4th Cir.1965) ). Even under this extremely limited scrutiny, however, the $3,250,000 award of compensatory damages cannot stand.
 
 
 22
 Under Bailey's own evaluation of the evidence, approximately $2,000,000 of the compensatory damage award may be attributable to ascertainable financial losses by Bailey.
 
 
 23
 At the very least, the jury must have awarded Bailey approximately $1,000,000 for the humiliation of undergoing bankruptcy.
 
 
 24
 Support for this $1,000,000 award lies in Bailey's testimony that he was required to resign from the Board of Directors of a local bank because he could not keep his loan current. The reasonable inference of embarrassment that a jury could draw from a lengthy struggle to remain solvent does support some type of award for humiliation. There is no evidence, however, that Bailey's emotional state warranted an award of the magnitude given in this case. No medical evidence indicates that Bailey's mental or physical health deteriorated significantly under the stress of bankruptcy. In fact, there is no evidence that Bailey sought professional medical help. Given the absence of such evidence and the precarious state of Bailey's finances before he met the Traylors, the compensatory award of at least $1,000,000 is " 'untoward, inordinate, unreasonable or outrageous." ' Arnold, 681 F.2d at 201 (quoting Grunenthal v. Long Island Railroad Co., 393 U.S. 156, 160 (1968) ).
 
 
 25
 The jury was properly instructed, and the award, while excessive, does not appear to be attributable to passion or prejudice. In some cases, this situation would lead us to order a remittitur in lieu of a new trial on the damages issue. In the instant case, however, a remittitur is inappropriate because the jury gave an undifferentiated lump sum award. See Arnold, 681 F.2d at 206; Earl T. Browder, Inc. v. County Court of Webster County, 145 W.Va. 696, 702-04, 116 S.E.2d 861, 871-72 (1960); J. Moore, J. Lucas, G. Grother, Moore's Federal Practice p 59.08 at 59-210 to -211 (4d ed. 1986). Although we can deduce the minimum award for humiliation, we have no way of knowing the exact amount the jury assigned to this highly elastic element of damage. See Arnold, 681 F.2d at 206 n.21. Because this amount cannot be segregated, we unfortunately must order a new trial on the issue of compensatory damages.[5]
 
 
 26
 Our finding of excessiveness on one major element of compensatory damages also requires us to order a new trial on the issue of punitive damages.[6] Under West Virginia law, the extent of harm inflicted and the amount of actual damage are factors which a jury can consider in assessing punitive damages. See Leach v. Biscayne Oil and Gas Co., 289 S.E.2d 197, 199-201 (W. Va. 1982) ). These factors are not the sole determinants of a punitive award, see Wells v. Smith, 297 S.E.2d 872, 878 (W.Va.1982), but they may significantly impact a particular jury's assessment. We have no way to ascertain the impact of the humiliation award on the jury's assessment of punitive damages. A new trial on the punitive damages issue is, therefore, warranted. See Baker v. Kroger Co., 784 F.2d 1172, 1176 & n. 4 (4th Cir.1986) (applying West Virginia law).
 
 
 27
 Accordingly, for the reasons discussed above, the liability verdict against appellants is affirmed. The compensatory and punitive damage awards, however, are reversed, and the damages issues are remanded for a new trial.
 
 
 28
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 In addition to raising the problem of multiple recovery for fraud, the Traylors claim that J & J Coal is a necessary party under a contractual theory. They claim that J & J Coal is a joint obligee to the Traylor-Bailey Purchase Agreement, and therefore must be a party to any lawsuit on the contract. See, e.g., Harrell & Summer Contract Co. v . Peabody Peterson Co., 546 F.2d 1227, 1229 (5th Cir.1977). This argument is unconvincing for two reasons. First, despite the Traylors' efforts to construe this action as a breach of contract suit on the Purchase Agreement, Bailey actually alleges a continuing course of fraudulent conduct, not breach of contract. Second, the Purchase Agreement can be construed as containing promises for the separate use and benefit of Bailey and J & J Coal. Under this construction, the parties are not joint obligees. See generally 4 A. Corbin, Corbin on Contracts Secs. 939-940 (1951) .In fact, the Traylors conceded that if Bailey's action were one for $200,000 on a breach of contract theory, J & J Coal would not be a necessary party. See Joint Appendix II at 348
 
 
 [2]
 F.J. Traylor argues at length that he cannot be personally liable under the Purchase Agreement, because he signed that agreement in reliance on Bailey's representation that only Oceana Partnership would be responsible. This argument misconstrues the nature of Bailey's claim, which is that the Traylors engaged in a deliberate course of fraudulent conduct designed to drive J & J Coal into bankruptcy and to acquire the Mountaintop property. The Purchase Agreement was merely one component of this scheme
 
 
 [3]
 In addition to the $402,500 auction price, the Traylors claim responsibility for repaying $220,000 invested by third parties in the Mountaintop property. Under their analysis, the property ultimately cost them $622,500, not $584,000, as contemplated in the Traylor-Bailey deal
 
 
 [4]
 A federal court sitting in diversity reviews the size of a jury verdict under federal law. See Conovan v. Penn Shipping Co., Inc., 429 U.S. 648, 649-50 (1977). The availability of certain types of damages and the components of a damage award, however, are governed by state law. See Baines Group, Inc. v. C & C Products Inc., 716 F.2d 1023, 1034 n.32 (4th Cir.1983) (citing Restatement (Second) of Conflict of Laws Sec. 171 (1971) )
 
 
 [5]
 To guide the district court on remand, we note that we find no merit in the Traylors' argument that Bailey cannot be compensated for $963,503.16 in unpaid, outstanding judgments against him, generally based on loans he personally endorsed for J & J Coal. The foundation for the Traylors' argument is Allied Productions, Inc. v. Duesterdick, 217 Va. 763, 232 S.E.2d 774 (Va.1977), a Virginia case refusing compensation for an unpaid judgment in the legal malpractice setting. West Virginia has never adopted the Allied rule, and neither Virginia nor West Virginia has extended it to a context remotely analogous to the instant one. Compensation for the unpaid, outstanding judgments can, therefore, be submitted to the jury on remand
 
 
 [6]
 The Traylors have argued that punitive damages are not available in this action because Bailey's claim is based on a breach of contract. In fact, the gravaman of Bailey's claim is the tort of fraud, for which punitive damages are available. See Painter v. Raines Lincoln Mercury, Inc., 323 S.E.2d 596 (W. Va.1984)