323 S.E.2d 596

**Charles J. PAINTER**

v.

**RAINES LINCOLN MERCURY, INC., a West Virginia Corporation and George Baber.**

No. 15884.

Supreme Court of Appeals of West Virginia.

Dec. 6, 1984.

Barbara J. Keefer, Robert A. Taylor, Masters & Taylor, Charleston, for appellant.

Larry W. Andrews, John R. Mitchell and Joseph C.S. Cometti, Charleston, for appellees.

PER CURIAM:

Charles J. Painter appeals from a judgment order entered upon a jury verdict in the Circuit Court of Kanawha County in an action alleging that the appellees fraudulently induced the appellant into purchasing a certain automobile. The judgment was in appellant's favor, except that he was not permitted to collect punitive damages from appellee Raines Lincoln Mercury (Raines).

Appellant seeks either a judgment against Raines for punitive damages or a new trial on the issue of Raines' liability for punitive damages.

We agree with appellant's contention that the jury should have been allowed to decide whether Raines was liable for punitive damages. We therefore reverse the judgment of the Circuit Court of Kanawha County and remand the case for a new trial.

I

On May 15, 1981, Charles J. Painter purchased a used 1977 Audi automobile for $2800. Painter gave a cashier's check in that amount to George Baber.

At the time of the sale, Baber told Painter that he (Baber) had owned the Audi for two years and that it had been previously owned by a Dr. Roncaglione. Baber said that he had just bought a new car from Raines and could not afford to keep his old car.

The following facts were not disclosed by Baber at the time of the sale: Baber was formerly employed by Raines, and Raines had taken the Audi as a trade-in earlier in the month.

Baber furnished Painter with an "odometer mileage statement" and with "Form No. MV–51–F NOTIFICATION OF TRANSFER OF LICENSE PLATES." The latter form enabled Painter temporarily to use license plates from a car he had recently sold.

When he took possession of the car, Painter requested that Baber handle the title transfer and that the vehicle be titled in the names of both Painter and his wife. Painter's wife wrote a check payable to the "W. Va. Dept. of Motor Vehicles." The amount of the check, $104, was computed by Baber and was intended to cover the 5% tax for certification of title plus a $2.00 application fee imposed under *W.Va.Code*, 17A–3–4.

Shortly thereafter, Painter received a new certificate of title in his name only, and he was also informed that he needed a new license plate. Puzzled by these unanticipated occurrences, he made an inquiry at the office of the State Department of Motor Vehicles in Charleston. There he was able to examine the old title certificate. It showed, to his surprise, that the purchase price was $2055, that Raines was the seller of the vehicle, and that his signature appeared on the document, although he had not signed it.

Painter filed a complaint in the Circuit Court of Kanawha County, in which it was alleged that Baber was an agent of Raines, that Baber and Raines had perpetrated a fraud by concealing the previous ownership of the car, and that Painter would not have purchased the car if he had known Raines was a previous owner. He demanded compensatory and punitive damages.[1]

Raines and Baber answered jointly, admitting that Painter purchased the Audi and that Baber was an agent of Raines.

---

1. It was further alleged that Baber and Raines had committed unfair or deceptive acts or practices in violation of The West Virginia Consumer Credit and Protection Act, *W.Va.Code*, 46A–1– 101, *et seq.* No demand for punitive damages was made in connection with the alleged statutory violations.

Raines later filed a separate amended answer in which it denied all affirmative allegations contained in the complaint.

Painter subsequently filed an amended complaint in which he demanded rescission of the sale contract, in addition to damages. Raines answered the amended complaint, denying the existence of a contract between it and Painter.

Evidence at trial revealed that Baber was employed by Raines in its collections department from May until December of 1980 and he was not so employed at the time of the sale in question.

The 1977 Audi was accepted by Raines on May 1, 1981 as a trade-in from John N. Wilcox. Raines gave a trade-in allowance of $1800. Painter introduced two bills of sale. The first (exhibit 3) showed a sale from Raines to Baber on May 5, 1981, for $2055; the second (exhibit 5) showed a sale from Raines to Painter on May 15, 1981, also for $2055. Baber admitted that he signed Painter's name to the second bill of sale and that he did so in the presence of Raines' general manager.

Both Baber and Dale Raines, President of Raines Lincoln-Mercury, testified that Baber purchased the car from Raines and then resold it to Painter. A page from Raines' account book showed the receipt of $2000 from Charles Painter. There was no entry showing receipt of any money from Baber.

Baber also testified that, with Painter's permission, he signed Painter's name as purchaser on the application for a new certificate of title. Painter denied giving such permission to Baber. Painter's "signature" on the application appears to have been notarized by Raines' credit manager. However, the credit manager and one of Raines' office workers testified that the latter signed the names of both the notary and the dealer on this document. The office worker testified that she was authorized by the credit manager/notary and the dealer to do so.

Since the vehicle was never titled in Baber's name, he avoided paying the 5% tax. Painter also saved $38 because the title application reflected a purchase price lower than that actually paid.

The jury verdict was: "We the jury find for the plaintiff and against the defendant, Raines Lincoln Mercury, Inc., and George Baber, and assess damages as follows: Compensatory damages *1,200.* Punitive damages *9,200.*"

The jury, in response to an interrogatory, decided that Painter was entitled to rescission of the contract.

On April 27, 1982, the trial court entered a judgment order that permitted Painter to recover compensatory damages from both defendants, but punitive damages from Baber only.

On May 5, 1982, Painter filed a motion for a judgment notwithstanding the verdict for amendment of the jury verdict or for a new trial. The motion was denied on February 2, 1983, and Painter appealed.

## II

The appellant's sole contention is that the trial court erred by refusing to give Plaintiff's Instruction No. 20, as offered, pertaining to Raines' liability for punitive damages.[2]

---

**2.** Plaintiff's Instruction No. 20, as offered, states:

   The court instructs the jury that an award of punitive damages may be awarded against a defendant who is found guilty of malice, oppression, intentional, wanton, willful or reckless conduct or criminal indifference to the civil obligation and rights of another.

   Therefore, if you the jury believe from a preponderance of the evidence in this case that the acts and conduct of the defendants, or either of them, acting individually or jointly or by and through their agent, servant or employee were such that they constitute malice, oppression or intentional wanton, willful or reckless conduct or criminal indifference to the civil obligations and rights of the plaintiff, then in that event you may assess exemplary or punitive damages against such defendants, that is, the jury will not be limited to mere compensation for the actual damages sustained by Mr. Painter, but the jury may assess against the guilty defendant or defendants such further damages as the jury feels and considers right in view of all the circumstances proved at trial as punishment to the defendant or defendants and further as a salu-

 Appellee Raines contends that there was no evidence adduced at trial supporting an award of punitive damages.

We have recently observed that

"[i]t is well settled in West Virginia that '[w]here in a trial by jury there is competent evidence tending to support a pertinent theory in the case, it is the duty of the trial court to give an instruction presenting such theory when requested to do so.' Syllabus Point 3 *Sayre v. Stevens Excavating Co.*, [163] W.Va. [324], 256 S.E.2d 571 (1979). It is also established that only slight evidence is required to support an instruction. *King v. Bittinger* [160] W.Va. [129], 231 S.E.2d 239 (1976)."

*Wells v. Smith*, 171 W.Va. 97, 297 S.E.2d 872, 880 (1982).

In syllabus point 1 of *Wells v. Smith*, *supra*, we held:

"In actions of tort, where gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others appear, or where legislative enactment authorizes it, the jury may assess exemplary, punitive or vindictive damages...." Syllabus Point 4, in part, *Mayer v. Frobe*, 40 W.Va. 246, 22 S.E. 58 (1895).

 While Plaintiff's Instruction No. 20 did not incorporate all the grounds which may subject a party to an assessment of punitive damages, there was sufficient evidence in the record to support the giving of the instruction as offered. The jury could reasonably infer from the evidence that Raines, through the acts of its employees, concealed from Painter the fact of its previous ownership of the 1977 Audi. Indeed, the trial court made a finding, in her judgment order, that Painter was fraudulently induced into buying the car by the actions of both Raines and Baber. Therefore, it was error to deny the appellant the opportunity to have the jury decide whether Raines' conduct would subject it to liability for punitive damages.

Accordingly, we reverse the judgment order of the Circuit Court of Kanawha County, insofar as it precluded the collection of punitive damages from Raines Lincoln-Mercury, and we remand this case to the Circuit Court of Kanawha County for a new trial on the issue of Raines' liability for punitive damages.

Reversed and remanded.

---

tory example to others to deter them from offending in like manner.

As amended and given, Instruction No. 20 read as follows:

The court instructs the jury that an award of punitive damages may be awarded against a defendant who is found guilty of malice, oppression, intentional, wanton, willful or reckless conduct or criminal indifference to the civil obligation and rights of another.

Therefore, if you the jury believe from a preponderance of the evidence in this case that the acts and conduct of the defendant, George Baber, were such that they constitute malice, oppression or intentional wanton, willful or reckless conduct, or criminal indifference to the civil obligations and rights of the plaintiff, then in that event you may assess punitive damages against the defendant, George Baber.