804 P.2d 1323

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, Petitioner,

v.

SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable Armando de Leon, a judge thereof, Respondent Judge,

Denise MIEL, Real Party in Interest.

No. 1 CA–SA 90–244.

Court of Appeals of Arizona, Division 1, Department C.

Jan. 22, 1991.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by

Ralph E. Hunsaker and Lisa M. Sommer, Phoenix, for petitioner.

The Langerman Law Offices by Richard W. Langerman, Amy G. Langerman and JoJene E. Mills, Phoenix, for real party in interest.

## OPINION

GERBER, Judge.

This special action arises from a discovery dispute between State Farm Mutual Automobile Insurance Company (State Farm) and Denise Miel, real party in interest. Petitioner State Farm alleges that the trial court abused its discretion in granting plaintiff Miel's motion to compel discovery. The petition presents an important issue of state-wide significance because this discovery issue is involved to some extent in virtually every bad faith suit in Arizona. Furthermore, a trial court's grant of a motion to compel answers to interrogatories and production of documents is not an appealable order. *Cornet Stores v. Superior Court,* 108 Ariz. 84, 492 P.2d 1191 (1972). Therefore, we previously accepted jurisdiction of this special action and indicated that an opinion would follow. This is the opinion.

## FACTS AND PROCEDURAL HISTORY

Denise Miel and Michael McKenzie were involved in an automobile accident. McKenzie was insured by State Farm under an automobile insurance policy with liability limits of $25,000.00.

Through her attorney, Miel contacted State Farm regarding her claim against McKenzie. Cindy Hoekstra was the State Farm claims adjuster assigned to handle Miel's liability claim. Miel's attorney sent a letter to Hoekstra which stated in pertinent part:

[B]ased on the understanding that there is only $25,000.00 of coverage available, Denise has authorized me to make an offer of settlement of her case as follows:

1. That State Farm confirm in writing no later than May 19, 1989, that $25,000 is the full coverage available to Michael Gregory McKenzie from any source that would be applicable to cover the accident of December 14, 1988;

2. That State Farm provide an affidavit from Michael Gregory McKenzie no later than May 19, 1989, that his State Farm coverage was the only insurance available to cover the accident of December 14, 1988;

3. That Michael Gregory McKenzie provide a financial statement or a sworn statement under oath concerning his financial condition no later than May 19, 1989; and

4. That no later than May 19, 1989, State Farm agree to tender the full policy proceeds **within five days of request** by Denise Miel. [Emphasis added.]

Hoekstra was aware that she should immediately refer policy demands for settlement to her supervisor. She failed to forward Miel's letter and also failed to respond within the time requested. The parties dispute whether her conduct was intentional or if it was an oversight. She later received authorization to offer McKenzie's policy limits in full settlement of Miel's claim. Twelve days after the deadline imposed by the plaintiff, Hoekstra sent a letter to Miel offering policy limits.

On the same date, Miel filed a lawsuit against McKenzie alleging negligence. State Farm retained counsel to represent McKenzie and did not assert policy defenses or reservation of rights. Miel and McKenzie eventually entered into a settlement agreement. McKenzie assigned Miel all potential claims against State Farm arising from the automobile accident. The settlement agreement was approved by the trial court. Judgment was entered in favor of Miel for $75,000 pursuant to Rule 16.1, Arizona Rules of Civil Procedure.

Miel then filed a second lawsuit against State Farm, alleging that "[d]efendants acted negligently, intentionally, in bad faith

and/or with an evil mind, and breached the contract of insurance with Michael Gregory McKenzie." The essence of this bad faith claim was that State Farm's 12–day delay in responding to Miel's demand letter was part of a strategy to defeat payment.

Miel noticed non-uniform interrogatories and requests for production.[1] Miel's interrogatories sought information regarding nationwide lawsuits involving State Farm. Miel requested "any and all" documents regarding: (1) punitive damage aspects of excess decisions, (2) failure to pay demands within the policy limits, (3) strict liability for failure to settle, (4) effects of offers of policy limits after prior refusal to pay within time limit, (5) all State Farm publications within the prior five years regardless of content, topic, or the issues in this lawsuit, and (6) all State Farm publications concerning excess liability claims published at any point in time.

State Farm objected to the discovery requests on the grounds that the requests were irrelevant, immaterial, oppressive, unduly burdensome, broad and vague. In response Miel merely modified the word "refusal" to "failure" in interrogatory numbers 23, 25, and 26. When State Farm did not file what Miel deemed to be a satisfactory response, Miel filed a motion to compel.

State Farm's response to the motion to compel reiterated objections of irrelevancy, overly burdensome and privilege. State Farm filed the affidavit of its Arizona claims superintendent who avowed that State Farm annually handles over 175,000 claims in Arizona. He stated State Farm does not keep any type of computer record to indicate which claims involve bad faith. He stated that State Farm would have to pull each file, review it and make a file-by-file determination. He stated that reviewing State Farm's house publication, *Obiter Dictum*, would require checking thousands of issues. This superintendent concluded it was not feasible for State Farm to review all these publications in order to respond to plaintiff's request.

In its minute entry addressing this discovery dispute, the trial court directed the parties to meet for four hours to attempt to resolve the dispute themselves. Pursuant to the trial court's order, both parties met and recertified their inability to resolve the dispute.

The trial court then granted Miel's motion with only minor limitation and overruled all State Farm's objections.[2] This special action followed.

## DISCUSSION

The trial court's broad discretion in discovery matters will not be disturbed on

---

1. The following are plaintiff's amended interrogatories:

   No. 7 Have you ever been a party to a lawsuit in which you were accused of improper conduct in the handling of claims such as those made by plaintiff? If so, please state:

   (a) The date of which the lawsuit was filed;

   (b) The jurisdiction in which the lawsuit was filed:

   (c) The title and cause number of the lawsuit

   (d) The name and address of the attorneys for the plaintiff and for you; and

   (e) The current status of such lawsuit including whether or not such lawsuit was terminated by settlement or judgment, the amount of any settlement or judgment.

   No. 22 Any and all materials/memos/manuals or other documents concerning punitive damage aspects of excess decisions.

   No. 23 Any and all materials/memos/manuals or other documents concerning failure to pay demands within limits.

   No. 25 Any and all materials/memos/manuals or other documents concerning strict liability for failure to settle.

   No. 26 Any and all materials/memos/manuals or other documents concerning effect of limits offer after prior failure to pay within time limit.

   No. 29 Copies of all State Farm publications, including but not limited to, Obiter Dictum, published in the last five years.

   No. 30 Copies of those portions of any and all State Farm publications, including but not limited to, Obiter Dictum, published at any point in time, concerning excess liability cases.

2. The trial court limited the publications requested in Interrogatory Nos. 29 and 30 from January 1, 1980 through the present.

appeal absent an abuse of discretion. *Brown v. Superior Court*, 137 Ariz. 327, 670 P.2d 725 (1983).

In this court State Farm asserts that the trial court abused its discretion by granting Miel's discovery requests seeking nationwide information without limitation. State Farm argues that the discovery requests are overbroad and reach far beyond the scope contemplated by *Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 733 P.2d 1073 (1987). State Farm also argues that the burden of responding to these discovery requests is extreme in light of the facts of the case.

We agree with State Farm's position. The trial court here abused its discretion. Under the 1984 Amendments to Rule 26, judges are encouraged to take an active role to identify and remedy discovery abuse. Rule 26, Arizona Rules of Civil Procedure (State Bar Committee Notes, 1984 Amendments). Discovery abuse has become a major problem in civil litigation because of its expense and extortionate effect. *See Comm'n on the Courts*, Report of the Task Force on Court Productivity, p. 63 (1989). The Commission on the Courts found that:

> ... a "discovery industry" has developed, and it is flourishing. The result has been a dramatic increase in the cost of civil litigation and a growing concern over that phenomenon. The public, the bench, and even lawyers who reap the rewards of discovery-induced increases in fees are expressing concern about the escalating cost involved. The cost of legal services, excluding the cost of in-house counsel and government attorneys, increased 244% between 1973 and 1983 and the trend continues unabated. Even most lawyers agree that the expense of the discovery process is disproportionate to the value of the information it yields. Thus, it is not surprising that the national legal community's concerns that the discovery process is in fact abused by "wild fishing expeditions" are shared by Arizona attorneys and laypeople as well.

*Id.* at 66. (Footnotes omitted.) Discovery in civil cases should be controlled and managed by the court from the onset, not perfunctorily relegated to the parties for resolution.

### a. *Relevance*

The discovery rules, we acknowledge, should be liberally construed to permit discovery of information "relevant to the subject matter in the pending action." Rule 26(b)(1), Arizona Rules of Civil Procedure. The information sought need only be "reasonably calculated to lead to the discovery of admissible evidence." *Id.* The goal of broad discovery is to facilitate mutual knowledge of all relevant facts gathered by the parties, promote efficient and speedy resolution of disputes and avoid surprise at trial. *See Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). We do not quarrel with these principles but find that they must be interpreted in a realistic context of relevance.

Miel contends that the information sought is relevant to the bad faith claim. In *Hawkins*, a leading bad faith case, the Supreme Court considered the admissibility of the testimony of Boettcher, a former Phoenix claims representative. 152 Ariz. at 498, 733 P.2d at 1081. The *Hawkins* court did not consider the scope of discovery in bad faith actions.

Boettcher's testimony was offered to establish the insurer's motive or state of mind when dealing with its insured. *Id.* *Hawkins* holds that information regarding how an insurance company handles other claims is admissible if it is sufficiently similar to the insured's experiences to show a pattern of claims handling. *Id.*

> Regarding Allstate's liability for bad faith, Boettcher's testimony is relevant to whether Allstate acted intentionally. Evidence of previous, *similar* acts alters the probability that the conduct in question was unintentional the more frequently an act occurs, the more probable it is intentional. [Emphasis added.]

*Id.*

In the present case, however, the discovery sought by Miel reaches far beyond

the scope contemplated by *Hawkins*. Miel seeks information regarding strict liability; Arizona has not adopted strict liability for bad faith cases. Miel requests "any and all" information relating to excess claim decisions; Miel has not narrowed her inquiry to facts similar to those at issue in this case. Miel requests detailed information relating to *any* lawsuit in which State Farm was accused of improper claims handling; Miel fails to limit her inquiry to a time period or to facts similar to those at issue here. Miel requests copies of "any and all" publications concerning excess liability cases; her requests necessarily include material which is mostly if not totally irrelevant. These interrogatory requests reach far beyond the limits of relevance as defined by Rule 26, Arizona Rules of Civil Procedure.

### b. *Overbroad and Unduly Burdensome*

There is a second rationale for our holding. This court may limit Miel's discovery requests, even if they were relevant, when the "discovery is unduly burdensome or expensive, given the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation." Rule 26(b)(1)(iii), Arizona Rules of Civil Procedure. The standard of Rule 26(b)(1) for deciding whether to limit discovery "must be applied in an even-handed manner to prevent use of discovery to wage a war of attrition or as a device to coerce a party, whether affluent or financially weak." Rule 26, Arizona Rules of Civil Procedure (State Bar Committee Note, 1984 Amendments).

State Farm submits that Miel's nationwide inquiry into other State Farm litigation is overbroad and unduly burdensome. We agree. Miel has not established sufficient similarity between the obligations imposed by Arizona law and the law of other jurisdictions to warrant such unlimited nationwide discovery. *See Baker v. CNA Ins. Co.*, 123 F.R.D. 322 (D.Mont.1988).

To compile the information requested, State Farm would have to review each of the 175,000 claims filed per year in Arizona alone to determine whether each meets Miel's criteria. On a nationwide basis State Farm would have to review millions of such claims. Without some limitation in space and time, this discovery is so overbroad as to generate gigantic paper searches with little prospect of finding anything of significant relevance. A party targeted by such a demand could well be tempted to settle a meritless claim rather than incur such effort and expense. This kind of coercive settlement, which occurs with some frequency, is a serious indictment of our civil justice system.

Although appropriate discovery methods vary with differing cases, the acquisition of truly relevant, non-onerous information could be attempted under Rule 33(c). An insurer could invite plaintiff to examine its records and publications. As may have been contemplated here, a plaintiff could depose the insurer's claims supervisor to discover factually-similar, narrowly-defined cases. The plaintiff could pose a question about factually-similar cases as an initial interrogatory, followed with a narrow request to produce. Simply put, when relevant and not burdensome, discovery should proceed without one party shifting to the other its burden of data collection and case preparation.

### CONCLUSION

Miel's slender showing of need stands in juxtaposition to the enormous burden placed upon State Farm to produce the requested documents. State Farm's request for relief is granted and the order of the trial court compelling this discovery as described herein is vacated, without prejudice to the trial court considering a renewed discovery request consistent with this opinion.

SHELLEY, P.J., and BROOKS, J., concur.