505 S.E.2d 454

**Donald C. McCORMICK, Appellant,**

v.

**ALLSTATE INSURANCE COMPANY, Appellee.**

**No. 24487.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 17, 1998.

Decided July 10, 1998.

Concurring Opinion of Justice Workman July 20, 1998.

Concurring and Dissenting Opinion of Justice Starcher Aug. 7, 1998.

James C. Peterson, Harry G. Deitzler, Hill, Peterson, Carper, Bee & Deitzler, Charleston, for Appellant.

Charles M. Love, III, Benjamin L. Bailey, Bowles, Rice, McDavid, Graff & Love, Charleston, for Appellee.

McCUSKEY, Justice:

This is an insurance dispute from the Circuit Court of Kanawha County. The appellant, Donald C. McCormick, asks this Court to reverse the lower court's April 10, 1997 order granting summary judgment in favor of the appellee, Allstate Insurance Company, on the appellant's punitive damages claim. The questions presented by this appeal are: (1) what standard is appropriate for recovery of punitive damages where an insured brings a claim against his or her insurance carrier for unfair claim settlement practices under *W.Va.Code* § 33–11–4(9) [1985], and (2) does the evidence in this case meet or fail to meet that standard. For the reasons stated below, we conclude that the trial court did not err in granting summary judgment for the appellee. Accordingly, we affirm.

## I.

### FACTUAL BACKGROUND

This has been a protracted and arduous litigation. Indeed, the instant appeal makes the fourth time that relief has been sought from this Court during the course of the proceedings below. In our last opinion, *McCormick v. Allstate Ins. Co.*, 197 W.Va. 415, 475 S.E.2d 507 (1996), the factual and procedural background of this case is comprehensively detailed. Consequently, we set forth herein only the salient facts pertinent to the narrow issues now before us.

On August 28, 1988, a 1984 Ford Escort owned by the appellant was severely damaged in a collision. The vehicle was insured by the appellee, Allstate Insurance Company (hereinafter "Allstate"). On August 29, 1988, the appellant notified Allstate of the damage to his automobile.

On August 30, 1988, David Dailey, the Allstate adjuster who handled the claim, inspected the vehicle and determined that it was a "total loss." In a total loss case, the appellant's insurance contract with Allstate required Allstate to pay the "actual cash value" of the appellant's vehicle prior to the loss. By the appellant's own account, his car was in poor condition before the accident. For example, two of the tires were "fairly worn out;" the lock cylinder on the hatchback had "rusted out;" and there were paint scratches on the hood, doors, and quarter panels.

In accordance with *W.Va.Code of State Regulations* § 114–14–7.4(a)(1),[1] Mr. Dailey utilized the National Automobile Dealer's As-

sociation Used Car Guide (NADA) in estimating the value of the appellant's vehicle. Mr. Dailey determined the loss payable under the appellant's policy to be $1,429.50. To arrive at that figure, Mr. Dailey began with the average retail value of the vehicle, which was $3,100.00. He then deducted $940.00 for high mileage, $595.00 for the car's condition prior to the loss,[2] and $250.00 for the appellant's deductible and added $25.00 for an AM/FM stereo, $79.50 for taxes, and $10.00 for the license fee.

On September 6, 1988, Mr. Dailey and the appellant had a telephone conversation. During the phone call, Mr. Dailey first offered to pay the appellant $1,100 and to allow him to keep his car. The appellant rejected that offer. Mr. Dailey then offered the appellant the $1429.50 total loss figure based upon the NADA guide book.

On September 9, 1988, Mr. Dailey and the appellant had another conversation regarding the appellant's claim. There is some disagreement as to whether the appellant accepted Mr. Dailey's previous offer of $1,429.50 during that conversation. However, it is undisputed that the appellant never made a counteroffer to Mr. Dailey for the amount which the appellant thought would be sufficient to compensate him. Moreover, after speaking with the appellant on September 9, Mr. Dailey mailed a check in the amount of $1,429.50 to the appellant's bank, which held a lien on the insured vehicle.

On November 4, 1988, the appellant filed a complaint against Allstate and Mr. Dailey, who was later dismissed from the case. The

---

1. *W.Va.Code of State Regulations* § 114–14–7.4(a)(1) is an insurance regulation which provides:

    7.4 Adjustment of total losses.—The following subdivisions shall govern the conduct of insurers in the adjustment of total losses:
    (a) If the insurer elects to make a cash settlement:
    (1) It must use the most recent publication of an "Official Used Car Guide" approved by the Commissioner and uniformly and regularly used by the company, as a guide for setting the minimum value of the motor vehicle which is the subject of the claim. Any deviation downward from the guide's retail valuation must be supported by documentation that gives detailed information about the

vehicle's condition, and any deductions must be measurable, discernible, itemized and specified concerning dollar amount, and they shall be appropriate in amount.

2. Based upon the record, including the C2308 inspection form, contemporaneous photographs of the vehicle, and Mr. Dailey's trial testimony, the breakdown of deductions in this category was as follows: $525.00 for damage to 16 separate parts of the car, including body rust, a corroded tailgate, two tires which were below state inspection guidelines, stained upholstery, and scratches and chips in the exterior paint; $50.00 for what Mr. Dailey believed was a problem with the power steering; and $20 for cleaning the vehicle's interior and engine.

complaint contained five counts, only two of which survived and are relevant to this appeal. In one count, the appellant claimed that Allstate failed to pay reasonable compensation on his property damage claim. In that count, he sought damages under the principles articulated in *Hayseeds, Inc. v. State Farm Fire & Casualty*, 177 W.Va. 323, 352 S.E.2d 73 (1986). In a second count, the appellant claimed that Allstate violated the unfair settlement practice provisions of *W.Va.Code* § 33–11–4(9) [1985], and sought damages, including attorneys fees and punitive damages, under the principles of *Jenkins v. J.C. Penney Casualty Insurance Company*, 167 W.Va. 597, 280 S.E.2d 252 (1981).

On July 31, 1992, the circuit court entered an order bifurcating the two counts of the appellant's complaint for trial purposes, with the first phase of the trial to be limited to the *Hayseeds* claim, and the second phase to be reserved for the statutory *Jenkins* claim. In addition, the parties and the trial court apparently agreed to bifurcate the issues within phase one, so that the issues of whether the appellant was entitled to compensatory damages and economic loss would be tried first, and after a verdict on those matters, the remaining damage questions under *Hayseeds* would be presented.

Beginning on May 2, 1994, a jury trial was conducted on the issues designated for the first portion of phase one (the *Hayseeds* claim), as explained above. At the conclusion of the trial, the jury returned a verdict of $995.00 for the appellant. This award consisted of $595.00 for Allstate's underpayment of damages to the appellant's vehicle and $400.00 for loss of use of the vehicle. The $400.00 loss of use award was later set aside by this Court on appeal.

After the verdict, the parties made several post-trial motions and presented various issues to the circuit court. Of those issues, only one is relevant to this appeal: whether the appellant was entitled to present his punitive damages claim to the jury. The circuit court ruled against the appellant on this issue, finding that he had not "substantially prevailed" on his underlying contract claim and that he had failed to establish the initial threshold of malice necessary to justify pursuit of punitive damages. Although the trial, as bifurcated, did not involve the appellant's *Jenkins* claim, the circuit court's post-trial order was more broad and precluded the appellant from pursuing punitive damages on both the *Hayseeds* count and the *Jenkins* count.

The appellant appealed from the circuit court's post-trial order, and this Court decided in *McCormick v. Allstate Ins. Co.*, 197 W.Va. 415, 475 S.E.2d 507 (1996), that the trial court's order was erroneous insofar as it precluded the appellant from proceeding to a trial of his *Jenkins* claim. We reasoned that it was contradictory for the trial court to preclude a trial of the appellant's statutory claim because he had failed to introduce evidence of malice in the portion of the *Hayseeds* claim tried, when punitive damages were not an issue in that trial. We further reasoned that there is no predicate that an insured "substantially prevail" on an underlying action in order to seek relief under *Jenkins*, and *Jenkins* allows a party to seek punitive damages under certain conditions. *Id.* at 427–28, 475 S.E.2d at 519–20. Thus, we reversed the judgment of the trial court denying a phase two trial and remanded the matter on the appellant's *Jenkins* claim for further proceedings.

On April 10, 1997 the circuit court entered an order granting a motion by Allstate for summary judgment on the issue of punitive damages under the appellant's *Jenkins* claim. In its order, the circuit court concluded that the standard for recovering punitive damages on a *Jenkins* claim is "actual malice."

## II.

### STANDARD OF REVIEW

The standard for granting summary judgment was established in Syllabus Point 3 of *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963), where this Court held:

> A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.

Moreover, on appeal, we review the circuit court's entry of summary judgment *de novo.* Syllabus Point 1, *Fayette County Nat. Bank v. Lilly,* 199 W.Va. 349, 484 S.E.2d 232 (1997); Syllabus Point 1, *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995); Syllabus Point 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994).

## III.

## DISCUSSION

As indicated above, this appeal causes us to determine the proper standard for the imposition of punitive damages where an insured brings a first-party claim against his or her insurance carrier for unfair settlement practices under *W.Va.Code* § 33–11–4(9) [1985], as permitted by *Jenkins v. J.C. Penney, supra.*[3]

The appellant argues that an insured's entitlement to an award of punitive damages under a *Jenkins* claim should be determined by applying the standard for punitives enunciated by this Court in *Stevens v. Friedman,* 58 W.Va. 78, 51 S.E. 132 (1905). The standard set forth in *Stevens* is as follows:

> In actions of tort, where gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others, appears, or where legislative enactment authorizes it, the jury may assess exemplary, punitive, or vindictive damages, these terms being synonymous.

*Id.* at Syl. Pt. 3 (citation omitted).

Unlike the present case, which involves the highly specialized area of property insurance, *Stevens* was an action to recover damages for assault and battery. Furthermore, the appellant offers no rationale, and we can conceive of none, for transposing the rule in *Stevens* to the recovery of punitive damages under a *Jenkins* claim. Hence, we decline to do so.

Allstate contends that the punitive damages standard applicable to first-party claims under *W.Va.Code* § 33–11–4(9) is the "actual malice" standard which was first articulated by this Court in *Hayseeds, Inc. v. State Farm Fire & Casualty,* 177 W.Va. 323, 352 S.E.2d 73 (1986). *Hayseeds* was a lawsuit brought by policyholders against their insurance carrier for its refusal to pay their property damage claim. We ultimately concluded in *Hayseeds* that the insurance company's "preconceived disposition to deny the claim ... did not rise to the level of malice" necessary for an award of punitive damages. *Id.* at 331, 352 S.E.2d at 81. In reaching that conclusion, we set forth a "bright line standard" for recovery of punitive damages against an insurer, stating:

> [P]unitive damages for failure to settle a property dispute shall not be awarded against an insurance company unless the policyholder can establish a high threshold of actual malice in the settlement process. By "actual malice" we mean that the company actually knew that the policyholder's claim was proper, but willfully, maliciously and intentionally denied the claim. We intend this to be a bright line standard, highly susceptible to summary judgment for the defendant, such as exists in the law of libel and slander, or the West Virginia law of commercial arbitration. See, e.g., *N.Y. Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) and *Board of Education [of Berkeley County] v. [W. Harley] Miller [Inc.],* 160 W.Va. 473, 236 S.E.2d 439 (1977). Unless the policyholder is able to introduce evidence of intentional injury—not negligence, lack of judgment, incompetence, or bureaucratic confusion—the issue of punitive damages should not be submitted to the jury.

*Id.* at 330–31, 352 S.E.2d at 80–81. This standard clearly differs from the *Stevens* standard since it is not concerned with wrongful conduct which affects merely *the rights of others,* generally, but instead requires proof of malicious conduct in the insurer's handling of *the policyholder's claim.*

Since *Hayseeds,* we have reaffirmed the "actual malice" standard for punitives in another first-party property damage case, *Berry v. Nationwide Mut. Fire Ins. Co.,* 181 W.Va. 168, 381 S.E.2d 367 (1989), and ex-

---

**3.** A claim for unfair claim settlement practices under *W.Va.Code* § 33–11–4(9) [1985] will hereinafter be referred to as a *"Jenkins* claim" or "statutory bad faith claim."

tended the standard to an insured's action against his insurer for failure to settle a third-party liability claim within policy limits. *Shamblin v. Nationwide Mut. Ins. Co.,* 183 W.Va. 585, 396 S.E.2d 766 (1990). Moreover, in both *Poling v. Motorists Mut. Ins. Co.,* 192 W.Va. 46, 450 S.E.2d 635 (1994), and *Dodrill v. Nationwide Mut. Ins. Co.,* 201 W.Va. 1, 491 S.E.2d 1 (1996), we applied the "actual malice" standard to a third-party's *Jenkins*-type action against an insurer for unfair claim settlement practices under *W.Va.Code* § 33–11–4(9). We see no reason why this Court should abandon the "actual malice" standard, with its focus on the insurer's treatment of the policyholder, where, as in the case *sub judice,* a first-party claim is asserted under the Unfair Claim Settlement Practices Act.[4]

In determining the appropriate standard for punitive damages in a first-party action under *W.Va.Code* § 33–11–4(9), we have examined the law in other jurisdictions which allow a private cause of action under their state unfair claim settlement practices acts.[5] Our survey of those states has revealed no authority for a departure from the "actual malice" standard established in *Hayseeds, supra.* In fact, every state which we found to have addressed the issue has adopted a similar punitives standard requiring proof of wrongdoing directed toward the insured, and evidenced in the mishandling of his or her claim, as opposed to merely generalized wrongdoing. *See, e.g., Wittmer v. Jones,* 864 S.W.2d 885, 890 (Ky.1993) ("[T]here must be sufficient evidence of intentional misconduct or reckless disregard of the rights of an insured or a claimant to warrant submitting

the right to award punitive damages to the jury."); *Dees v. American National Fire Ins. Co.,* 260 Mont. 431, 861 P.2d 141, 149 (1993) ("[P]unitive damages may be awarded when a defendant has been found guilty of actual malice.... A defendant is guilty of actual malice if he has knowledge of facts or intentionally disregards facts that create a high probability of injury to the plaintiff and ... deliberately proceeds to act....").

◼ Accordingly, in harmony with other jurisdictions and consistent with our prior decisions in this area, we now hold that where an insured asserts a first-party claim against his or her insurance carrier for unfair claim settlement practices under *W.Va.Code* § 33–11–4(9) [1985], punitive damages shall not be awarded against the insurer unless the policyholder can establish a high threshold of actual malice in the settlement process. By "actual malice" we mean that the insurance company actually knew that the policyholder's claim was proper, but willfully, maliciously and intentionally utilized an unfair business practice in settling, or failing to settle, the insured's claim.

Having determined that the "actual malice" standard controls the recovery of punitive damages under the appellant's *Jenkins* claim, we now address the second issue identified above. That is, does the evidence in this case meet or fail to meet the "actual malice" standard?

Before embarking on an analysis of the facts, we pause to discuss *Hawkins v. Allstate Insurance Company,* 152 Ariz. 490, 733 P.2d 1073, *cert. denied,* 484 U.S. 874, 108 S.Ct. 212, 98 L.Ed.2d 177 (1987), a case on which the appellant relies to support his posi-

---

4. When this case was last before us, we implicitly noted that the "actual malice" standard governs the recovery of punitives in a first-party *Jenkins* action, stating stated that "to recover punitive damages it must be shown that the conduct of the insurer was wilful, malicious, and intentional." *McCormick v. Allstate Ins. Co.,* 197 W.Va. 415, 423, 475 S.E.2d 507, 515 (1996).

5. West Virginia's Unfair Claim Settlement Practices Act, *W.Va.Code* § 33–11–4(9) [1985], was derived from the National Association of Insurance Commissioners' Model Unfair Claim Settlement Practices Act. Almost every state has adopted some version of the Model Act. Unlike West Virginia, a vast majority of courts have held

that their state unfair claim settlement practices acts do not create private causes of action against insurers. 16A John Alan Appleman & Jean Appleman, *Insurance Law and Practice* § 8885 (Supp.1998); *see, e.g., A & E Supply Co. v. Nationwide Mut. Fire Ins. Co.,* 798 F.2d 669 (4th Cir.1986), *cert. denied,* 479 U.S. 1091, 107 S.Ct. 1302, 94 L.Ed.2d 158 (1987) (decided under Virginia Unfair Insurance Practices Act, citing decisions from other jurisdictions). Only a small minority of courts have found a private cause of action under their state statutes. *See Jenkins v. J.C. Penney, supra* (recognizing an implied private cause of action under *W.Va.Code* § 33–11–4(9)).

tion that the evidence justifies an award of punitive damages. Upon a careful review of *Hawkins*, we find that the appellant's reliance on it is misplaced for a number of reasons. First, *Hawkins* was an action for the common law tort of bad faith. It did not arise under the Arizona Unfair Claim Settlement Practices Act, A.R.S. § 20–461, which provides "solely an administrative remedy" and does "not create a private right or cause of action." *Melancon v. USAA Cas. Ins. Co.*, 174 Ariz. 344, 849 P.2d 1374 (Ct.App.1992). Hence, the punitive damages award upheld in *Hawkins* related to a claim substantially different from the appellant's claim, which is based upon the provisions of this state's Unfair Claim Settlement Practices Act, *W.Va. Code* § 33–11–4(9) [1985]. Second, *Hawkins* is factually distinguishable from the instant case in several respects. Most importantly, the adjuster in *Hawkins* deducted a flat clean-up fee of $35.00 without ever inspecting the claimants' vehicle to see if it was in fact dirty, whereas in this case, Mr. Dailey inspected the appellant's vehicle and itemized the deductions made, allotting $20.00 for cleaning the car's stained interior and dirty engine. This factual difference is critical because Allstate's use of the invalid $35.00 cleaning deduction in *Hawkins* supplied the "bad faith conduct" which, when motivated by the requisite "evil mind," supports an award of punitives under Arizona law. *See Hawkins*, 733 P.2d at 1080–81. Third, *Hawkins* holds "that information regarding how an insurance company handles other claims is admissible if it is sufficiently similar *to the insured's experiences* to show a pattern of claims handling." *State Farm Mut. Auto. Ins. Co. v. Superior Court*, 167 Ariz. 135, 804 P.2d 1323, 1326 (Ct.App.1991) (emphasis added). The policyholders in *Hawkins* offered the testimony of a former Allstate employee to establish the insurer's motive or state of mind when dealing with its insureds. The *Hawkins* Court ruled that this testimony was admissible because it "made it more probable that the invalid $35.00 cleaning fee deduction used in estimating the actual cash value of Hawkins' loss was not mistakenly nor inadvertently made." 733 P.2d at 1081. In the case *sub judice*, the appellant's experiences do not include Allstate's use of unsubstantiated deductions in adjusting his claim. Thus, *Hawkins* does not persuade us that there is sufficient evidence to support an award of punitive damages in this case.

■ As indicated earlier, the evidence in this case shows that Mr. Dailey promptly inspected the appellant's totaled vehicle and computed its actual cash value using the NADA guide. By the appellant's own admission at trial, multiple parts of his car were damaged before the loss. In calculating the amount payable on the claim, Mr. Dailey accounted for the car's condition prior to the accident by taking certain deductions, all of which were itemized on an inspection form.[6] Less than two weeks after the appellant notified Allstate of his loss, Allstate payed $1,429.50 on the claim, believing that the appellant had accepted that figure as a settlement. The appellant conceded in his trial testimony that, prior to Allstate's payment of $1,429.50, he never made any offer or counter proposal to Mr. Dailey. In other words, Mr. Dailey was never informed that there was a certain amount of money greater than $1,429.50 that the appellant was claiming as fair compensation for his loss. We find that this evidence fails to satisfy the "actual malice" standard since it does not show that Allstate knew that the appellant's claim was proper and maliciously settled it in an unfair manner. We therefore conclude that Allstate was entitled to summary judgment in

---

**6.** On October 7, 1988, Informational Letter No. 55, signed by West Virginia Deputy Insurance Commissioner, Hanley C. Clark, was mailed to all insurance companies selling automobile insurance in West Virginia. Informational Letter No. 55 states, in pertinent part:

> [A]ny deduction of "reconditioning" charges from the book value of total loss automobiles is highly artificial and is improper. Therefore, it should be noted that the deduction of "reconditioning", "clean-up", "clean and shampoo",

"carpet and upholstery cleaning" and similar fees from total loss automobile claims will be treated as unfair trade practices.

(Emphasis in original). Prior to this directive, the taking of reconditioning deductions was listed as a factor in determining the value of used cars by the "Official Used Car Guide" (the NADA guide), which states that "[a]ppropriate deductions should be made for re-conditioning costs incurred to put the car in salable condition."

its favor on the issue of punitive damages under the appellant's *Jenkins* claim.

## IV.

### *CONCLUSION*

Upon all of the above, the circuit court's decision granting summary judgment in favor of Allstate Insurance Company on the issue of punitive damages under the appellant's *Jenkins* claim is affirmed, and this matter is remanded to the circuit court for further proceedings.

Affirmed.

WORKMAN, Justice, concurring.

(Filed July 20, 1998)

While I agree with the result of the majority opinion, I write separately to emphasize the distinction between a *Hayseeds* action and a *Jenkins* statutory action in an attempt to minimize any ambiguity. As we recognized in *McCormick*, 197 W.Va. 415, 475 S.E.2d 507 (1996), a *Jenkins* claim "is a type of action which is wholly distinct from an underlying contractual action on an insurer's failure to comply with its insurance contract." 197 W.Va. at 427, 475 S.E.2d at 519. We recently acknowledged, in footnote five of *Light v. Allstate Insurance Co.*, —— W.Va. ——, 506 S.E.2d 64 (No. 24365, July 7, 1998), that the phrase "bad faith" has been used to refer to both the *Hayseeds* underlying contract action and the *Jenkins* statutory action. The confusion potentially generated through that lack of distinction is insidiously dangerous. Erosion of the distinction between the two will inevitably lead to further overlapping between the two types of claims. While the actions parallel one another in some respects, they are different in others. The two causes of action require different elements of proof and determinations of liability. Any practice by this Court of using the two phrases interchangeably may have been the result of inattentiveness, not design, and additional confusion can be limited by remedying that practice.

While we have not been squarely confronted with an issue of duplication of damages resulting from the overlapping of the two claims, we recognized the potential for a duplication of damages problem as early as the origin of the statutory cause of action in *Jenkins:*

> To permit a direct action against the insurance company before the underlying claim is ultimately resolved may result in duplicitous litigation since the issue of liability and damages as they relate to the statutory settlement duty are still unresolved in the underlying claim. Once the underlying claim has been resolved, the issues of liability and damages have become settled and it is possible to view the statutory claim in light of the final result of the underlying action. A further policy reason to delay the bringing of the statutory claim is that once the underlying claim is resolved, the claimant may be sufficiently satisfied with the result so that there will be no desire to pursue the statutory claim. Moreover, it is not until the underlying suit is concluded that the extent of reasonable damages in the statutory action will be known.

167 W.Va. at 608–09, 280 S.E.2d at 259.

Obviously, as we explained in syllabus point seven of *Harless v. First National Bank*, 169 W.Va. 673, 289 S.E.2d 692 (1982),

> It is generally recognized that there can be only one recovery of damages for one wrong or injury. Double recovery of damages is not permitted; the law does not permit a double satisfaction for a single injury. A plaintiff may not recover damages twice for the same injury simply because he has two legal theories.

In *Dodrill v. Nationwide Mutual Insurance Co.*, 201 W.Va. 1, 491 S.E.2d 1 (1996), we approved a jury instruction cautioning the jury against duplicitous damages in an unfair claims settlement practices case, as follows: "The law does not permit double recovery of damages. And if you find the Plaintiff has been fully compensated for all of his injuries in the underlying action, then you should award him only the increased fees and expenses resulting from the failure to offer a prompt and fair settlement." 201 W.Va. at 16, 491 S.E.2d at 16.

As an element of the differentiation between the contract action and the statutory

action, the majority in the present case has, in syllabus point two, held that punitive damages shall not be awarded against an insured in a first-party statutory claim unless the policyholder can establish a high threshold of actual malice, meaning that the insurer actually knew that the claim was proper, but willfully, maliciously and intentionally utilized an unfair business practice in settling, or failing to settle, the insured's claim. Implicit in that standard is the recognition that in the statutory setting, it is the unfair settlement *practice* toward which the statute is directed, rather than just the action toward that particular individual. Thus, contrary to the approach of the lower court, recovery of punitives does not necessitate actual malice toward the individual insured, but instead contemplates only that the insurer denied the claim knowing it to be proper, *and* that the unfair practice itself can in aggravated circumstances indicate such a blatant disregard of civil obligations to insureds in general that the insurer may be liable for punitives. Because the trial court made a finding of fact that the insurer did not deny the claim with knowledge that it was proper, the first part of the standard for punitive damages was not met, and it is for that reason that the ruling stands, despite the lower court's apparent erroneous conclusion that the malice must be directed at that specific insured. However, it should be emphasized that it is that unfair settlement *practice* from which evidence of malice will usually be derived, and no evidence of actual malice against the insured is necessary so long as it is demonstrated that the insurer was utilizing an unfair settlement practice it knew to be wrong.

STARCHER, Justice, concurs in part and dissents in part:

(Filed Aug. 7, 1998)

I agree with the majority that the punitive damages rule espoused in *Hayseeds, Inc. v.*

*State Farm Fire & Cas.*, 177 W.Va. 323, 352 S.E.2d 73 (1986) should be extended to actions under the Unfair Trade Practices Act, *W.Va.Code* 33–11–1 to –10. I believe that before a policyholder can recover punitive damages against an insurance carrier in an unfair trade practices action, the policyholder must show actual malice on the part of the insurance carrier. I dissent, however, to the majority's application of this rule to the evidence in this case.

The general standard for recovering punitive damages in West Virginia was established in 1895 when we held that:

> In actions of tort, where gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others appear, or where legislative enactment authorizes it, the jury may assess exemplary, punitive or vindictive damages; these terms being synonymous.

Syllabus Point 4, *Mayer v. Frobe*, 40 W.Va. 246, 22 S.E. 58 (1895). Punitive damages are intended to act as "a warning to [the wrongdoer] and others to prevent a repetition or commission of similar wrongs." Syllabus Point 1, *Id.*[1]

*Mayer v. Frobe* formed the basis for Syllabus Point 3 of *Stevens v. Friedman*, 58 W.Va. 78, 51 S.E. 132 (1905), quoted by the majority opinion. However, the majority reasoned that *Mayer*'s general rule of punitive damages was inapplicable in this case because "*Stevens* was an action to recover damages for assault and battery," whereas this case involves the "highly specialized area of property insurance." Maj. op. at 539, 505 S.E.2d at 458.

This reasoning fails to address the fact that *Mayer v. Frobe* has been "our law with regard to what evidence will justify an award of punitive damages ... for nearly [now over] one hundred years." *Davis v. Celotex*

---

1. A similar standard was adopted by the Court in Syllabus Point 3 of *Jopling v. Bluefield Water Works & Improvement Co.*, 70 W.Va. 670, 74 S.E. 943 (1912), where we stated:

> To sustain a claim for punitive damages the wrongful act must have been done maliciously, wantonly, mischievously or with criminal indifference to civil obligations. A wrongful act

done under a bona fide claim of right and without malice in any form, constitutes no basis for such damages.

*In accord, Jarvis v. Modern Woodmen of America*, 185 W.Va. 305, 406 S.E.2d 736 (1991) (*per curiam*); Syllabus Point 3, *Warden v. Bank of Mingo*, 176 W.Va. 60, 341 S.E.2d 679 (1985).

*Corp.*, 187 W.Va. 566, 568, 420 S.E.2d 557, 559 (1992). Applying *Mayer v. Frobe*, we have said that punitive damages can be awarded for handicap and workers' compensation discrimination,[2] for the reckless infliction of emotional distress,[3] in product liability actions,[4] in actions against car dealers making misrepresentations about vehicles,[5] and in lawsuits involving reckless driving.[6]

*Hayseeds, supra*, represents a deviation from the general punitive damages rule. We viewed the policy issued to the policyholder in *Hayseeds* as a contract, and said that "punitive damages are unavailable in an action for breach of contract unless the conduct of the defendant [insurance carrier] constitutes an independent, intentional tort." 177 W.Va. at 330, 352 S.E.2d at 80. Rather than allow an award of punitive damages to be awarded for an insurance company's wanton, willful, or reckless conduct or criminal indifference towards a policyholder, in *Hayseeds* we required a policyholder to prove his or her insurance company acted with actual malice in the settlement process. "Actual malice" means that "the company actually knew that the policyholder's claim was proper, but willfully, maliciously and intentionally

2. *Vandevender v. Sheetz*, 200 W.Va. 591, 490 S.E.2d 678 (1997).

3. *Stump v. Ashland, Inc.*, 201 W.Va. 541, 553, 499 S.E.2d 41, 53 (1997).

4. *Davis v. Celotex Corp.*, 187 W.Va. 566, 420 S.E.2d 557 (1992).

5. *Muzelak v. King Chevrolet*, 179 W.Va. 340, 368 S.E.2d 710 (1988) (dealer misrepresented vehicle repair history); *Painter v. Raines Lincoln Mercury*, 174 W.Va. 115, 323 S.E.2d 596 (1984) (*per curiam*) (dealer misrepresented prior owner of used car to induce its purchase).

6. *Smith v. Perry*, 178 W.Va. 395, 359 S.E.2d 624 (1987) (*per curiam*); *Bond v. City of Huntington*, 166 W.Va. 581, 276 S.E.2d 539 (1981) (reckless driving by a police officer); *Hensley v. Erie Ins. Co.*, 168 W.Va. 172, 283 S.E.2d 227 (1981) (driving while intoxicated).

7. The conduct that will support a finding of "actual malice" does not necessarily have to be focused specifically on the plaintiff, but can be a general policy. As we said in *Hayseeds*,

> One example of "actual malice" would be a company-wide policy of delaying the payment of just claims through barraging the policy-

denied the claim." 177 W.Va. at 330–331, 352 S.E.2d at 80–81.[7]

In tandem with our holding on punitive damages in *Hayseeds* was our holding that a policyholder can recover damages for attorney's fees, aggravation, and inconvenience from the insurance company merely upon showing that the policyholder "substantially prevailed" in enforcing the insurance contract. This "low threshold" of proof for consequential damages effectively counterbalances the "high threshold" of proof required for punitive damages.

So, if an insurance company denies a policyholder's claim because of reckless incompetence, lack of judgment or bureaucratic confusion, a policyholder will still get the benefit of his or her contractual bargain: policy benefits plus reimbursement for attorney's fees, aggravation, inconvenience, and prejudgment interest on any out-of-pocket expenses. The incentive for the insurance carrier to correct the problem with the settlement process exists in the fact that it will have to pay consequential damages to its policyholder for each day it delays paying claims.[8] These consequential damages are to be awarded to policyholders regardless of

> holder with mindless paperwork. For example, in a claim for household contents in a burned out house, the company should simply pay the face amount of the policy. Since the companies themselves often require a certain level of insurance on contents, it shows actual malice to require the policyholder to fill out form after form and argue for months over what, in nearly every case, is a foregone conclusion. Here the actual malice is a desire to keep millions of dollars in claims money at interest within the company.

177 W.Va. at 330–31 n. 2, 352 S.E.2d at 81 n. 2.

8. I cannot say, however, that the award of consequential damages to a policyholder is a perfect disincentive to insurance company misfeasance. One commentator recently suggested that it is in an insurance company's best interest to dispute coverage with policyholders "because, for every dollar spent to lure lawyers in coverage litigation, the insurers make conservatively five dollars in interest on the money that would have been paid to the policyholder. Thus, coverage litigation is a moneymaker for insurance companies." Eugene Anderson, *Insurance Coverage Litigation* at viii (1997).

whether the insurance carrier acted in "bad faith."

In an action under the Unfair Trade Practices Act, a policyholder can recover as damages increased attorney's fees and other increased costs and expenses resulting from the insurance company's use of an unfair business practice in the settlement of a claim. Further, as with *Hayseeds*, the Act is in part designed to encourage insurance companies to correct negligent settlement practices harmful to the policyholder. A policyholder need not prevail against the insurance company on the underlying claim in order to recover damages under the Act. The policyholder need only show the insurance company engaged in an unfair settlement practice as defined by the statute. *See McCormick v. Allstate Ins. Co.*, 197 W.Va. 415, 475 S.E.2d 507 (1996).

Therefore, because the damages under an unfair trade practices action are similar to those recoverable in an action under *Hayseeds*,[9] and the purposes for the two actions are similar, I believe it is justified that a policyholder must show "actual malice" by the insurance carrier in order to support an award of punitive damages in either type of action.

That being said, I am confounded by the majority's application of this rule to the record in this case. When a circuit court considers a motion for summary judgment, and this Court reviews *de novo* an order granting summary judgment, "the underlying facts and all inferences are viewed in the light most favorable to the nonmoving party[.]" *Painter v. Peavy*, 192 W.Va. 189, 193, 451 S.E.2d 755, 759 (1994). The majority's opinion in this case fails to acknowledge any of the evidence in the record favorable to the appellant, and instead adopts Allstate Insurance Company's recitation of the facts.

I am primarily at a loss as to how the majority concluded that "the appellant's experiences do not include Allstate's use of unsubstantiated deductions in adjusting his claim." Maj. op. at 460. The evidence in the record shows (1) that the $595.00 in deductions taken by Allstate *were* unsubstantiated, and (2) that such deductions have been routinely taken by Allstate in other cases over the last 30 years, thereby circumstantially suggesting that Allstate acted with actual malice towards the appellant and all other policyholders with total vehicle losses.

The appellant below proffered the testimony of four former Allstate insurance adjusters, each of whom would testify to a "general business practice" by Allstate of taking "reconditioning" or "cleaning" fees on every total vehicle loss claim. Prior to 1987, it appears that Allstate would take an automatic $35.00 reconditioning fee in every case. In 1987, the Arizona Supreme Court issued its opinion in *Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 733 P.2d 1073 (Ariz.1987) and affirmed a $3.5 million verdict against Allstate for taking automatic "cleaning fee" deductions when a vehicle was declared a total loss.

After the *Hawkins* decision was issued, Allstate allegedly informed its adjusters to continue taking unsubstantiated deductions, but to vary the amounts of or reasons for the deductions. In this case, the Allstate adjuster did not take an "automatic" $35.00 deduction for cleaning fees—instead, the adjuster deducted $575.00 for paint scratches, rust, worn tires, plus $10.00 "for cleaning the interior" and another $10.00 because he "felt [the engine] was excessively dirty."[10]

---

**9.** As Justice Workman discusses in her concurring opinion, while the damages between the two types of actions are duplicitous, the difference between a *Hayseeds* action and a first-party action under the Unfair Trade Practices Act lies in the elements of proof necessary to support a claim. To recover damages under *Hayseeds*, a policyholder must substantially prevail on the underlying contract action. A recovery under the Act is predicated solely upon the insurance company engaging in an unfair settlement practice as defined by the statute, and a recovery can occur regardless of whether the policyholder pre-

vails on the underlying insurance claim. *See McCormick v. Allstate Ins. Co.*, 197 W.Va. 415, 475 S.E.2d 507 (1996).

**10.** The form used by the Allstate adjuster suggests that the adjuster deducted $20.00 for cleaning the exterior of the vehicle and $50.00 for cleaning the engine. *See State ex rel. McCormick v. Zakaib*, 189 W.Va. 258, 259 n. 1, 430 S.E.2d 316, 317 n. 1 (1993). However, the adjuster testified that an illegible note scribbled to one side of the form indicates the adjuster found the power steering was disconnected, and that he

An expert for Allstate conceded that it was improper for Allstate to have deducted $10.00 for a scratch on the *inside* of the trunk lid of the appellant's car, characterizing that action as "nitpicking." Further, the NADA Official Used Car Guide, contrary to the majority's conclusion, does not support deductions for "worn tires" or an "excessively dirty" engine. As the insurance commissioner stated in a letter issued in September 1988:

> While the West Virginia Insurance Commission is aware that the current "Official Used Car Guide" makes mention of "reconditioning charges" it must be considered that *such guide is written with the assumption that those vehicles listed are to be resold.* This is not the case with total loss vehicles.
>
> While the "Official Used Car Guide" is a useful tool in determining a vehicle's value its limitations must be recognized and it must be construed reasonably. The deduction of such "reconditioning fees" when applied to a total loss vehicle which will only be resold for salvage and which will never see a used car lot is simply too far removed from reality to be permissible.

*See* West Virginia Insurance Commission Informational Letter No. 55 (September 1988).[11]

The majority implicitly holds that Informational Letter No. 55 is inapplicable to this case because the appellant's car was totaled in late August 1988, and the letter was not mailed to all insurance companies until early October 1988. However, even in the absence

of this Informational Letter, two facts are clear. First, in August 1988, the NADA Official Used Car Guide was written with the assumption that the vehicles listed therein were to be resold, and there is nothing in the record to show Allstate had any intention of selling the appellant's car. Hence, Allstate taking any "reconditioning fee" to place the car in salable condition was patently unreasonable.

Second, and more importantly, a jury of six members of the community determined that Allstate's $595.00 in deductions were not "fair and reasonable" and were a breach of the insurance contract. That jury verdict was affirmed by this Court. *McCormick v. Allstate Ins. Co.*, 197 W.Va. 415, 475 S.E.2d 507 (1996). The appellant's experts were willing to testify that Allstate had a general business practice of taking such deductions. Allstate's theory was that if the insurance company saved one dollar through deductions on every claim, on a million claims the company would make a million dollars in profit.[12] Policyholders apparently rarely question such deductions. As the Arizona court held in *Hawkins*, "[e]vidence of previous, similar acts alters the probability that the conduct in question was 'unintentional; the more frequently an act occurs, the more probable it is intentional." 152 Ariz. at 498, 733 P.2d at 1081. Thus, the testimony of the appellant's experts (evidence overlooked by the majority opinion) made it more probable that the unfair and unreasonable deductions taken by Allstate were not mistakenly or inadvertently made, but were done with actual malice.[13]

---

assigned the $50.00 figure as the cost of reconnecting the power steering. He testified that the $20.00 figure represented his estimate of $10.00 to clean the interior and $10.00 to clean the engine of the appellant's vehicle.

**11.** This informational letter states that *"any* deduction of 'reconditioning' charges from the book value of total loss automobiles is highly artificial and is improper ... [and] will be treated as unfair trade practices."* The majority opinion has relegated this relevant portion of Informational Letter No. 55 to a footnote. *See* Maj. op. at 541 n. 6, 505 S.E.2d at 463 n. 6.

**12.** The jury in *Hawkins v. Allstate Ins. Co., supra,* adopted Allstate's reasoning in its award of $3.5 million in punitive damages. The jury's award was apparently based on the plaintiff's argument

that that was how much profit Allstate would make by taking a $35.00 reconditioning fee on 100,000 vehicles.

**13.** Circumstantial evidence is admissible to prove actual malice in an unfair trade practices action. As the *Hawkins* court stated,

> We note that unless the defendant is willing to take the stand and admit its 'evil mind,' the plaintiff must prove entitlement to punitive damages with circumstantial evidence. Thus, whether the defendant intended to injure the plaintiff or consciously disregard the plaintiff's rights may be suggested by a pattern of similar unfair practices.

152 Ariz. at 498, 733 P.2d at 1081. *See also, State Farm Mut. Auto. Ins. Co. v. Stephens,* 188 W.Va. 622, 627, 425 S.E.2d 577, 582 (1992)

I am also disconcerted about the majority's focus on the fact that the appellant never made a counteroffer to Allstate's settlement offer. While it is true that the appellant never made a counteroffer, the testimony in the record suggests that the Allstate adjuster was rude and would not negotiate with the appellant. Further, Allstate wrote the check and mailed it to the appellant's bank, the lienholder on the car, without the appellant's knowledge. Even assuming the appellant could have negotiated with the Allstate adjuster, my question is this—*why* should he have to negotiate? The principle underlying *Hayseeds* and the Unfair Trade Practices Act is that insurance companies are supposed to deal fairly with policyholders, without prompting or cajoling. Allstate should have made an objective offer based solely on the Official Used Car Guide without taking the

deductions that a jury found to be unwarranted.

The majority's spin on the factual record suggests that its okay for insurance companies to lie, cheat and steal from a policyholder, and if the policyholder doesn't object, then as a matter of law that conduct is not "actual malice." Such a holding is contrary to a fundamental sense of fairness.

Therefore, while I concur in the rule adopted by the majority opinion, I dissent to the application of that rule to the record.

("[I]n a bad faith claim against an insurance carrier, previous similar acts can be shown to demonstrate that the conduct was intentional.")