IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO



FILED BY CLERK

FEB 28 2013

COURT OF APPEALS
DIVISION TWO

CALISTO MARIKO WELLS,           )
                                )
                Petitioner,     )
                                )
        v.                      )        2 CA-SA 2012-0076
                                )        DEPARTMENT A
HON. HOWARD FELL, Judge Pro     )
Tempore of the Superior Court of the )   O P I N I O N
State of Arizona, in and for the County )
of Pima,                        )
                                )
                Respondent,     )
                                )
        and                     )
                                )
THE STATE OF ARIZONA,           )
                                )
        Real Party in Interest. )
                                )
_____ )

SPECIAL ACTION PROCEEDING

Pima County Cause No. CR20120696001

JURISDICTION ACCEPTED; RELIEF GRANTED

The McDonald Law Firm, P.C.
  By Alfred McDonald                                    Tucson
                                          Attorney for Petitioner


Barbara LaWall, Pima County Attorney
  By Nicolette Kneup                                    Tucson
                               Attorneys for Real Party in Interest


E C K E R S T R O M, Presiding Judge.

¶1 In this special action, petitioner Calisto Wells challenges the respondent judge's ruling ordering him to disclose police-officer witness statements made during interviews of which the state had no notice, despite his intent to use the statements solely for impeachment. We accept special action jurisdiction to clarify that a trial court may, upon a showing of substantial need and undue hardship, order such materials disclosed. But because our record is unclear whether the state made such a showing here, we vacate the respondent judge's order.

**Background**

¶2 Wells was charged with two counts of aggravated assault, based on his having assaulted a police officer with a dangerous instrument. Unbeknownst to the prosecutor, Wells interviewed some of the police-officer witnesses, arranging the interviews directly with the Tucson Police Department. The state became aware of the interviews after Wells attempted to interview the victim officer. The state then filed a motion to require disclosure of recordings or transcripts of the interviews. It argued in its motion that it had substantial need of the recordings or transcripts "to see if there [is] any additional or different information than the information in the police reports."

¶3 In his response to the state's motion, Wells relied on this court's decision in *Osborne v. Superior Court*, 157 Ariz. 2, 754 P.2d 331 (App. 1988), arguing that because he intended to use the officers' statements only for impeachment, he was not required to disclose them. The respondent judge granted the state's motion, concluding it could not obtain the "substantial equivalent" of the recordings because "obviously if the State interviews the police officers that have been interviewed they can't remember exactly

2

what they said, and so the State wouldn't be prepared should [Wells] use the interviews for impeachment." Wells then filed a petition for special action relief in this court.

**Discussion**

¶4        This court has a great deal of discretion in determining whether to accept special action jurisdiction. *Arpaio v. Figueroa*, 229 Ariz. 444, ¶ 5, 276 P.3d 513, 515 (App. 2012). And "'appellate courts do not routinely entertain petitions for extraordinary relief on discovery matters.'" *Id.*, *quoting Am. Family Mut. Ins. Co. v. Grant*, 222 Ariz. 507, ¶ 10, 217 P.3d 1212, 1216 (App. 2009). But, particularly when the issues presented are legal questions likely to recur, "'special action jurisdiction may be appropriate because a discovery order is not immediately appealable.'" *Id.*, *quoting Am. Family Mut. Ins. Co.*, 222 Ariz. 507, ¶ 10, 217 P.3d at 1216. In this case, because the arguments made present legal questions left undeveloped in one of our previous decisions, we accept jurisdiction.

¶5        In his petition, Wells relies on this court's decision in *Osborne*. He contends the *Osborne* court broadly held "that the defendant cannot be ordered to disclose statements taken from State witnesses outside the presence of the prosecutor which the defendant intends to use solely for impeachment purposes." He argues that the respondent judge therefore erred in ordering him to disclose the officers' statements because they "will be use[d] solely for impeachment purposes."

¶6        In *Osborne*, the trial court had ordered the defendant to disclose to the state statements we characterized as falling into "three general categories": (1) "statements of state witnesses who had been interviewed in the presence of the prosecutor,"

(2) "statements of witnesses disclosed by the state who had been interviewed outside the presence of the prosecutor," and (3) "tape recordings of a prison disciplinary hearing which was attended by" defense counsel but not the prosecutor. *Id.* at 4, 754 P.2d at 333. This court determined that Rule 15.2(c), Ariz. R. Crim. P., requires a defendant to disclose statements only of witnesses he or she will "call as witnesses at trial" and "papers, documents, photographs and other tangible objects" that he or she will use at trial. *See Osborne*, 157 Ariz. at 4-5, 754 P.2d at 333-34. Thus, we reasoned, that rule did not require disclosure of any of the statements because the defendant wished to use them solely for impeachment and because they were "testimonial" rather than "real" evidence. *Id.* at 5, 754 P.2d at 334.

¶7 We also determined the trial court's order for disclosure could not be supported under Rule 15.2(g).[1] *See Osborne*, 157 Ariz. at 5-6, 754 P.2d at 334-35. That subsection of the rule provides: "Upon motion of the prosecutor showing that the prosecutor has substantial need in the preparation of his or her case for material or information not otherwise covered by Rule 15.2, that the prosecutor is unable without undue hardship to obtain the substantial equivalent by other means," the court may order a person to make such material available. Ariz. R. Crim. P. 15.2(g). We concluded the state had not demonstrated undue hardship under the rule. *Osborne*, 157 Ariz. at 6, 754 P.2d at 335. We pointed out that the state had or could have had the same opportunity to

---

[1]At the time *Osborne* was decided in 1988, current Rule 15.2(g) was numbered Rule 15.2(f). *See* 174 Ariz. LXX-LXXI (1993). Because the only changes to the language of that subsection of the rule since 1988 have been stylistic, for ease of reference we refer herein to the current rule.

record or transcribe the statements made when the prosecutor was present or at the disciplinary hearing and that "[t]he expense to the state of transcription does not amount to 'undue hardship.'" *Id*. And we stated that, "[w]ith respect to all of the statements," the state would "have the opportunity to review them and make . . . objections as to accuracy and context if and when they are used by petitioner to impeach the state's witnesses." *Id*. Relying on this final assertion, Wells argues essentially that a defendant need not disclose any statements of state witnesses made to the defense so long as they are to be used solely for impeachment.

¶8        We do not read *Osborne* so broadly. We stated that "the disclosure of prior statements used for impeachment is governed by Ariz. R. Evid. 613(a)" and that "[t]he mere possibility that such statements may be used and may be inaccurate or taken out of context does not justify a blanket order requiring disclosure of all statements not otherwise covered by Rule 15.2." *Osborne*, 157 Ariz. at 5, 754 P.2d at 334. But in so ruling, we focused our analysis on whether the state had met the requirements of Rule 15.2(g) under the facts presented. Our *Osborne* decision does not state specifically whether the prosecutor was notified of, or had any opportunity to attend, the interviews at which she was not present. In this case, however, the parties agree that the defendant did not notify the prosecutor's office about the interviews, but rather had arranged them directly with the police department.

¶9        In his response to the state's motion for disclosure below, Wells argued that by arranging the interviews with the police department, he had notified the "State," because police officers are representatives of the state and the officers could have called

the prosecutor's office if they felt they needed legal help for the interviews. We do not agree. A prosecutor is responsible for disclosing materials in the possession of "[a]ny law enforcement agency which has participated in the investigation of the case and that is under the prosecutor's direction or control." Ariz. R. Crim. P. 15.1(f)(2). Because the rule therefore anticipates that the prosecutor will control the discovery process, it does not provide that those other agencies may receive discovery or discovery requests or otherwise act as an "agent" or "representative" of the state for disclosure purposes. *See id.*

¶10 In *Carpenter v. Superior Court*, 176 Ariz. 486, 862 P.2d 246 (App. 1993), this court rejected a claim similar to that presented here. In that case, the defendant had attempted to subpoena the police custodian of records without notifying the prosecutor's office. *Id.* at 488, 862 P.2d at 248. This court agreed with the trial court's ruling quashing the subpoena and its conclusion "that a criminal defendant cannot use the subpoena power of the court to circumvent the rules of criminal procedure and thereby obtain discovery without the knowledge of the state or consent of the trial court." *Id.* at 489, 862 P.2d at 249. In the present situation, it does not appear that Wells invoked the court's subpoena power, and *Carpenter* did not extend its conclusion to mere independent investigation by the defendant. *Id.* at 491, 862 P.2d at 251. But, in our view, the fact the prosecutor did not have an opportunity to attend the interviews is relevant to determining whether the state can establish an undue hardship in obtaining the substantial equivalent of the statements sought. *State v. Strickland*, on which Wells relied below, decided in the context of trial scheduling and a police officer witness's scheduling

6

conflict, is inapposite in this context. 27 Ariz. App. 695, 696-97, 558 P.2d 723, 724-25 (1976).

**¶11** Although as outlined above, *Osborne* is distinguishable from this case to some extent, we recognize that some of the language therein more broadly asserts that impeachment evidence is not subject to court-ordered disclosure under Rule 15.2(g). To the extent that *Osborne* can be so read, we overrule it. "Respect for precedent demands 'that we not lightly overrule precedent and we do so only for compelling reasons.'" *State v. Hickman*, 205 Ariz. 192, ¶ 37, 68 P.3d 418, 426 (2003), *quoting Lowing v. Allstate Ins. Co.*, 176 Ariz. 101, 107, 859 P.2d 724, 730 (1993). And we depart from this doctrine of stare decisis only with "'special justification'"—something "more than that a prior case was wrongly decided." *Id.*, *quoting Arizona v. Rumsey*, 467 U.S. 203, 212 (1984). Here, however, we address a court-created rule, the context in which the "burden of proof" required to overrule precedent is lowest because such "rules are expected to change with the times." *Id.* ¶ 38.

**¶12** We conclude the reasons to depart from a broad reading of *Osborne* are "sufficiently compelling" to overrule it. *Hickman*, 205 Ariz. 192, ¶ 39, 68 P.3d at 427; *cf. State v. McCann*, 200 Ariz. 27, ¶ 14, 21 P.3d 845, 849 (2001) (overruling precedent on court-made rules appropriate when circumstances changed). In recent years, the process of discovery has been expanded and become increasingly more open. *See, e.g.*, *State ex rel. Corbin v. Superior Court*, 6 Ariz. App. 414, 416-17, 433 P.2d 65, 67-68 (1967) (noting few states allowed defendant to inspect state witness statements before trial, but expansion of discovery had been advocated). And this court has noted "trial by ambush

is a tactic no longer countenanced in Arizona courts." *Carlton v. Emhardt*, 138 Ariz. 353, 355, 674 P.2d 907, 909 (App. 1983); *see also Bryan v. Riddel*, 178 Ariz. 472, 477, 875 P.2d 131, 136 (1994) (noting "amended [civil disclosure] rules attempt to change a culture of advocacy in which 'hiding the pea' has too frequently been the objective").

¶13        Indeed, "[t]he underlying principle of our disclosure rules is the avoidance of undue delay or surprise." *State v. Rienhardt*, 190 Ariz. 579, 586, 951 P.2d 454, 461 (1997). To that end, "'[t]he object of discovery is to assist the search for truth by providing the parties with all the evidence possible so that the crucial facts may be presented at trial and a just decision made.'" *State v. Helmick*, 112 Ariz. 166, 168, 540 P.2d 638, 640 (1975), *quoting Wright v. Superior Court*, 110 Ariz. 265, 267, 517 P.2d 1261, 1263 (1974); *see also Bryan*, 178 Ariz. at 477, 875 P.2d at 136 ("Disclosure, like all discovery, is not a game."). Although not required to be disclosed under Rules 15.1(a), (b), (e) or 15.2(a), (c), (e),[2] we see no reason to preclude a court from ordering the disclosure of impeachment evidence if a party makes the appropriate showing of substantial need for the evidence and undue hardship in obtaining it by other means. *See* Ariz. R. Crim. P. 15.1(g), 15.2(g).

¶14        In the context of civil procedure, our supreme court has rejected a claim that evidence intended for impeachment purposes should be distinguished from evidence

---

[2]We note, however, that under Rule 15.3(d), when the trial court has granted a motion for examination on oral deposition, a party is required to provide statements of witnesses being deposed "for examination and use at the taking of the deposition to any party who would be entitled thereto at trial." Thus, at least under certain circumstances, the court can issue an order that would provide statements intended only for impeachment to the opposing party.

intended for use in a party's case-in-chief for disclosure purposes. *Zimmerman v. Superior Court*, 98 Ariz. 85, 91-92, 402 P.2d 212, 216-17 (1965). Rule 26.1(a), Ariz. R. Civ. P., which governs the scope of disclosure in the civil context, contains different provisions than those set forth in the criminal rules, Rules 15.1(g) and 15.2(g). But like Rule 26.1(a), Ariz. R. Civ. P., Rules 15.1(g) and 15.2(g) do not exclude impeachment evidence from the range of evidence a trial court may order disclosed—rather the criminal rules provide that a court may order disclosed "material or information not otherwise covered by Rule 15.2 [or 15.1]," for which the party seeking disclosure "has substantial need in the preparation of his or her case." Ariz. R. Crim. P. 15.1(g), 15.2(g). Our supreme court's conclusion that the civil rules "do not give immunity to evidence because it may be used for impeachment purposes," therefore is relevant here. *Zimmerman*, 98 Ariz. at 92, 402 P.2d at 217.

¶15        Likewise, nothing in Rule 613, Ariz. R. Evid., prohibits a trial court from ordering disclosure of impeachment evidence in appropriate cases before trial. The rule merely provides that when examining a witness, a party must "show" or "disclose" the contents of a witness's prior statement "to an adverse party's attorney." Ariz. R. Evid. 613(a). Indeed, both the criminal and civil rules of procedure provide separate rules for the conduct of discovery. In view of our supreme court's conclusion that impeachment evidence is not immune from disclosure in the civil context, we cannot accept Wells's argument that the existence of Rule 613 precludes the pretrial disclosure of impeachment material in the criminal context.

**¶16** Additionally, evidence that can be used for impeachment also may be substantive. *Zimmerman*, 98 Ariz. at 90, 402 P.2d at 215. Precluding a trial court from ordering the disclosure of evidence for which a party has a "substantial need" based on the label placed on that evidence by the opposing party therefore is problematic. Ariz. R. Crim. P. 15.1(g), 15.2(g). The true nature of the evidence may become known only when presented at trial, causing delays and possibly irreversible prejudice resulting in mistrial. This is inconsistent with our courts' ongoing efforts to promote a culture of advocacy in which the goal of disclosure is "the preparation of cases for trial or settlement" rather than "'hiding the pea.'" *Bryan*, 178 Ariz. at 477, 875 P.2d at 136. We therefore reject Wells's contention at oral argument in this court that public policy favors trial by ambush in this context. In the criminal context, as well as the civil, our disclosure process should allow the parties to exchange information openly and to make decisions as to how to proceed on that basis. Because allowing a court to order disclosure of witness statements intended for impeachment advances the purposes of the discovery rules and the ongoing efforts made by our courts to ensure fair trials aimed at determining the truth, we hold that such statements may be ordered disclosed under Rule 15.2(g) in appropriate cases and reject the *Osborne* court's suggestion that disclosure of impeachment material at trial obviates any substantial need for pretrial disclosure.

**¶17** We turn then to whether this matter is such an appropriate case. In light of the lack of any record before us demonstrating that the state has yet articulated a showing of substantial need for the materials and undue hardship, we vacate the respondent

judge's order granting disclosure.  Upon such a showing by the state, the respondent is authorized to order the petitioner to provide the requested disclosure.

**Disposition**

¶18         For all these reasons, we accept special action jurisdiction and vacate the respondent judge's order.

/s/ *Peter J. Eckerstrom*

PETER J. ECKERSTROM, Presiding Judge

CONCURRING:

/s/ *Joseph W. Howard*

JOSEPH W. HOWARD, Chief Judge

/s/ *J. William Brammer, Jr.*

J. WILLIAM BRAMMER, JR., Judge*

*A retired judge of the Arizona Court of Appeals authorized and assigned to sit as a judge on the Court of Appeals, Division Two, pursuant to Arizona Supreme Court Order filed December 12, 2012.