NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

———————————————

MARIA de la PAZ SALGADO, *Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

TASER INTERNATIONAL, INC., *Respondent Employer*,

TWIN CITY FIRE INS. CO. THE HARTFORD, *Respondent Carrier*.

No. 1 CA-IC 14-0051
FILED 4-7-2015

———————————————

Special Action - Industrial Commission
ICA Claim No.  20130-980299
Carrier Claim No. YZS53406C
The Honorable Layna Taylor, Administrative Law Judge

**AWARD SET ASIDE**

———————————————

COUNSEL

Snow, Carpio & Weekley, PLC, Phoenix
By Erica González-Meléndez
*Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Andrew F. Wade
*Counsel for Respondent ICA*

Klein, Doherty, Lundmark, Barberich & La Mont, P.C., Tucson
By Eric W. Slavin
*Counsel for Respondent Employer/Carrier*

---

**MEMORANDUM DECISION**

Judge Donn Kessler delivered the decision of the Court, in which Presiding Judge John C. Gemmill and Judge Kenton D. Jones joined.

---

**K E S S L E R**, Judge:

**¶1**        This is a special action review of an Industrial Commission of Arizona ("ICA") decision upon review for a non-compensable claim. One issue is presented on appeal: whether the administrative law judge ("ALJ") erred by finding that the petitioner employee ("claimant") failed to file her workers' compensation claim within one year after her claim accrued. Because we find the ALJ's award on untimeliness is erroneous, we set it aside.

**JURISDICTION AND STANDARD OF REVIEW**

**¶2**        This court has jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(2) (2003), 23-951(A) (2012), and Arizona Rule of Procedure for Special Actions 10.[1]  In reviewing findings and awards of the ICA, we defer to the ALJ's factual findings, but review questions of law *de novo*. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14, 63 P.3d 298, 301 (App. 2003).  We will vacate an award if it is based on an erroneous application of the law. *Am. Family Mut. Ins. Co. v. Grant*, 222 Ariz. 507, 511, ¶ 11, 217 P.3d 1212, 1216 (App. 2009) ("[A] court abuses its discretion when it commits an error of law in reaching its decision or the record fails to provide 'substantial support' for the decision." (citation omitted)).

**FACTUAL AND PROCEDURAL HISTORY**

**¶3**        The claimant worked for the respondent employer, Taser International, Inc. ("Taser"), as a solder assembly worker. She filed a worker's report of injury on April 5, 2013, for a gradual bilateral hand and arm injury resulting from performing repetitive work activities, claiming

---

[1] We cite the current version of the applicable statute when no revisions material to this decision have since occurred.

the date of injury was December 20, 2012.  The respondent carrier, Twin City Fire Insurance Company c/o The Hartford ("Twin City"), denied her claim for benefits, and she timely requested an ICA hearing.

¶4          The ALJ held a hearing for testimony from the claimant and her treating surgeon.  Following the hearing, the ALJ entered an award for a compensable claim based on an injury effective December 20, 2012.  Taser requested administrative review solely on the theory that the claim was untimely filed.  The ALJ then reversed her award and entered a decision upon review for a non-compensable claim, finding the claim was untimely filed.  The claimant next brought this appeal.

## DISCUSSION

¶5          The claimant argues the ALJ erred by finding that her workers' compensation claim was untimely filed.  The statute of limitations for workers' compensation claims requires a claim to be filed "within one year after the injury occurred or the right thereto accrued.  The time for filing a compensation claim begins to run when the injury becomes manifest or when the claimant knows or in the exercise of reasonable diligence should know that the claimant has sustained a compensable injury."  A.R.S. § 23-1061(A) (Supp. 2014).

¶6          The Arizona Supreme Court has held that the one-year period for filing a workers' compensation claim does not begin to run until the injured employee recognizes or should have recognized: (1) the nature of his injury, (2) the seriousness of the injury, and (3) the probable causal relationship between the injury and the employment.  *Pac. Fruit Express v. Indus. Comm'n*, 153 Ariz. 210, 214, 735 P.2d 820, 824 (1987).  As the court explained,  the time to file a claim "begins to run when the claimant knew or in the exercise of reasonable diligence should have known of the injury." *Id.* at 213, 735 P.2d at 823.  The court further explained, however, that "when an injury is 'slight or trivial at the time and noncompensable and later on develops unexpected results for which the employee could not have been expected to make a claim . . . then the statute runs . . . from the date the results of the injury became manifest and compensable.'"  *Id.* at 213-14, 735 P.2d at 823-24 (citation omitted).  Thus, "[t]he time period for filing a claim does not begin to run until the claimant, judged by the standard of a reasonable person, recognizes the 'nature, seriousness and probable compensable character' of his injury."  *Id.* at 214, 735 P.2d at 824 (citation omitted).  In other words, the time for filing a claim "begins to run when the injured employee perceives the nature and seriousness of the injury and recognizes the causal relationship between his injury and his employment."

*Id.* Finally, the court held that "[*f*]*or an injury to be serious and not slight or trivial, the symptoms must be of sufficient magnitude. . . . Awareness of the permanence of a condition is a factor when determining the magnitude of the injury.*" *Id.* (emphasis added) (internal citation omitted).

¶7        Under that test, the record shows the time to file a claim began either in May or June 2012 or November 2012, within one year of when claimant filed her claim.  The claimant testified she began work at Taser in August 2007.  She initially worked on the assembly line, and then later, began soldering an average of 300 electronic circuit boards per day.  The claimant worked ten hours per day, four days per week.  She began to feel hand and arm pain in 2010, but she thought it was only temporary as she did not have pain on nonworking days.  Although the claimant believed her work caused her pain, she did not report it to her employer because it was transient and her coworkers advised her not to do so.

¶8        In May 2012, the claimant began working a lot of overtime, including working much longer days and working on weekends.  At this point, her symptoms substantially worsened and became constant. By November 2012, the pain and numbness in her hands had become unbearable and she had lost her grip strength, so in December 2012, she went to see her family practitioner.  At that point, she was afraid of losing her hands and she could no longer handle the symptoms.  Her doctor obtained EMG testing, and based on the results, referred her to Sebastian Ruggeri, M.D., a hand specialist, for treatment.  The claimant's family practitioner also recommended that she stop her soldering work and provided her with a doctor's note for her employer.  The claimant's supervisor told her that there was no other work available.  The claimant then spoke with human resources and she was offered time off under the Family Medical Leave Act.

¶9        With regard to her hand symptoms, the claimant gave the following testimony on cross-examination:

> Q. [By Mr. Reynoso] And in 2010, you started noticing more symptoms after you started soldering?
>
> A. [Claimant] Yes.
>
>         . . . .

Q. So your symptoms were getting worse?

A. That's right.

Q. And in 2010, you did not go to a doctor, correct?

A. No.

Q. In 2010 when your symptoms were getting worse, did you have any idea what was causing your hand numbness and the pain in your arm?

A. My work.

*Q. Did your symptoms continue to worsen during 2010?*

*A. Yes. They started getting worse from May to June when I said that we -- when I had to work without any rest for ten hours, that's when my symptoms got worse.*

*JUDGE TAYLOR: In June of what year?*

*THE WITNESS: of 2012.*

Q. BY MR. REYNOSO: Okay. And tell me why you didn't go to the doctor in 2010 when you noticed your symptoms getting worse.

A. Well, first I didn't pay very much attention to it because I thought it was gonna go away, and the second thing, I talked it over with my fellow workers and they told me that the first thing that was gonna happen if I should complain about my pains and my numbness to my boss was that they were gonna fire me immediately.

. . . .

Q. What helps you make the determination that it was your work causing your symptoms? Was it that on your off days, you wouldn't have those symptoms, correct?

A. That's right.

(Emphasis added.)

5

¶10    Dr. Ruggeri testified that he first saw the claimant on January 22, 2013. At that time, he recorded:

> Chief Complaint – right hand numbness and pain – Description–The patient states she has been having numbness and pain in her right hand, getting progressively worse since May 2011. The patient states that the pain starts at the fingertips and moves back towards her wrist.

He diagnosed the claimant with median neuritis of the right hand with tendonitis of the right hand and wrist, and he operated on the claimant's right hand on February 25, 2013. It was his opinion that the claimant's work activities were a contributing cause of her condition.

¶11    In her initial award, the ALJ found that the claim was compensable effective December 20, 2012. After considering the petition for review, the ALJ issued the decision on review, finding:

> Here, the [claimant] knew there was a connection between her symptoms and her work back in 2010. I cannot credit her testimony that she did not seek medical attention, file a claim or report the symptoms to her employer until 2012 because she thought her symptoms would go away, as she testified that her symptoms continued to worsen over time beginning in 2010. Based on that worsening, she knew, or should have known, the seriousness of her condition. Therefore, it is found that the [claimant's] claim was untimely filed, and the Industrial Commission lacks jurisdiction to further consider her claim.

¶12    The ALJ relied on the claimant's testimony that her symptoms began to worsen in 2010 to find that her claim became manifest before 2012. That decision was erroneous because it misapplied the test for when an injury is manifest. As explained above, an injury is manifest in part based on the employee's understanding that the injury is serious and not trivial in nature. The evidence does not show the injury was serious and not trivial in nature nor that the claimant should have known of the seriousness of the injury to file a claim until at least May or June 2012. Claimant expressly testified her hand symptoms began in 2010 and only occurred on the days that she worked and the pain would go away when she did not work. In May or June 2012, the claimant began to work six days per week. She stated that between then and November 2012, her symptoms dramatically worsened and became constant to the point where she was losing her ability

to grip items with her hands, the pain would no longer go away on the weekends, and she was afraid of losing her hands. She filed her claim in April 2013, within one year of that sudden increase in seriousness of the condition. Under the *Pacific Fruit* test, that claim was timely.

¶13 Our conclusion that the ALJ erred in concluding the claim untimely finds further support in *Saylor v. Indus. Comm'n*, 171 Ariz. 471, 831 P.2d 847 (App. 1992). In *Saylor*, the employee was initially injured in a slip and fall at work in July 1989. 171 Ariz. at 472, 831 P.2d at 848. She went to see a physician, but returned to work three days later experiencing intermittent pain and treating it with ibuprofen. *Id*. In July 1990, the pain increased when she stretched at her work. *Id.* The medical evidence showed a herniated disc as a result of the first incident, but no injury due to the second incident. *Id.* at 473, 831 P.2d at 849. A claim on the second incident was filed, and approximately two weeks after that claim was denied she filed a claim on the 1989 injury. *Id.* at 472-73, 831 P.2d at 848-49. The two claims were consolidated and the ALJ ruled that the claim on the 1989 injury was filed more than one year from that date of injury because the injury was manifest and the employee could not have thought it to be slight or trivial. *Id.* at 473, 831 P.2d at 849. This Court reversed, finding insufficient evidence from which the ALJ could have concluded that the employee "should reasonably have known of the nature and seriousness of her injury." *Id.* As we explained, she could not have been held responsible for failing to personally equate her pain with a herniated disc, and she was not "given any reason to believe she had suffered a more serious injury" by the physician who saw her after the first injury. *Id.* at 473-74, 831 P.2d at 849-50. We found significant that the employee continued to work for more than a year without seeing another doctor and self-treated with only ibuprofen. *Id.* at 474, 831 P.2d at 850. As we concluded, those facts could "reasonably be viewed as evidence of only one thing: that she failed to realize both the nature and seriousness of her injury. Only after the pain became significantly worse following the second incident . . . did she have reason to believe she had suffered a more serious injury." *Id.*

¶14 The facts in this case are even stronger than those in *Saylor* to conclude the claim was timely. Here, the claimant's pain was so minor until May 2010 that she saw no need to see a physician and it would go away on the weekends. This would not have put her on notice of a serious injury and certainly not that she was suffering from a condition requiring surgery. Only in May or June 2012, after a significant increase in the numbers and days of her working did claimant suffer from pain that would not go away when she was not working and when, by November, she could not grip items with her hands, leading her to see a physician for fear of losing her

hands.  That evidence does not show claimant realized both the nature and seriousness of her injury prior to May 2012, if indeed the injury was that serious prior to her increase in working hours and days.

## CONCLUSION

**¶15** For all of the foregoing reasons, we set aside the decision upon review which concluded the claim was untimely.



Ruth A. Willingham · Clerk of the Court
FILED : ama